# Richmond

## First and Merchants National Bank of Richmond, Et. Al., Etc., Et Al. v. County of Amherst.

October 14, 1963.

Record No. 5626.

Present, All the Justices.

The opinion states the case.

*Leroy R. Cohen, Jr. (Joel E. Kocen; Cohen, Cox & Kelly,* on brief), for the plaintiffs in error.

*Wm. M. McClenny*, for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

In December 1960 the appellants filed their petition under § 58-1145 of the Code to correct the assessment for taxation of their real estate in Amherst county. They alleged that the assessment for the years 1958, 1959 and 1960 was excessive and far more than the market value of the properties, and they prayed that it be reduced and that they be reimbursed for the taxes paid by them for said three years in excess of the amount they should have paid on a proper assessment. The property involved consisted of two dams across the James River, one at Big Island and the other at Coleman Falls, and for the three years in question they were assessed as follows:

"Marcuse, Milton E., Isaac J., Corinne D. E., and Moses M.

"Big Island Dam and Land of 9.4 acres............$12,800.00
"Coleman Falls property......................... 18,432.00"

Each assessment was on the basis of approximately 20% of the supposed fair market value of the properties, a rate used for real estate assessments generally in the county.

The petitioners, appellants here, are the successors in title of the four Marcuses named above.

After hearing the evidence the court below held that the presumption in favor of the correctness of the assessment had not been overcome, and accordingly denied the appellants' petition. Section 58-1145 provides that in such proceeding the burden is on the taxpayer to show that the property is assessed at more than its fair market value or that the assessment is not uniform.

Prior to 1929 these two dams were owned by Bedford Pulp and Paper Company, Incorporated, and provided power for a paper mill at Big Island and a pulp mill at Coleman Falls, four miles below, both owned and operated by Bedford. In 1929 Bedford constructed a steam plant at Big Island for grinding pulp and the mill at Coleman Falls was dismantled and removed. Since that time the Coleman Falls dam has not been used and has yielded no return to any owner for a period of more than thirty years. A witness for the appellants testified that it is of no more value than a natural rock ledge across the river at the same height. The height of the dam is between

seventeen and eighteen feet and its length around eight hundred feet.

The witness so testifying was William Martin Johnson, partner in a well-known firm of consulting engineers in nearby Lynchburg. He testified that in 1947 or 1948 he and associates attempted to work out a plan for the development of the Coleman Falls dam, which was built in 1850 or 1851, in order to generate and sell power, but they found that the project was not feasible because the cost of construction and the varying flow of water in the river prohibited the generating of power there at a competitive rate. He said there might be some possibility in the future of operating the dam in connection with something else, but that it did not seem feasible at present, and he could not see that the dam had any useful value.

However, in their petition the appellants alleged that in 1958 an independent appraisal was made of the two dams which showed that the Big Island dam had no fair market value but that the fair market value of the Coleman Falls property was $10,000, and the petition alleged that the basis for a proper assessment of the Coleman Falls dam should not exceed that amount.

Appellants also introduced two witnesses who had engaged in the real estate and appraisal business for thirty years or more and were familiar with these and other properties on the James River. One testified that the highest and best value of the Coleman Falls property was $10,000. The other testified that he and the witness just referred to tried to find what would be a possible use for the Coleman Falls property after eliminating any use for the generating of power, and they came to the conclusion that the only use would be a highly speculative one, as for recreational purposes, and they did not see how anyone would pay over $10,000 for the whole property.

Both of these witnesses testified that the dam at Big Island had no market value because of the restrictions in the deed by which it and the Coleman Falls dam were conveyed to the Marcuses. One of them said that in view of these restrictions they considered this dam to be a liability to the owner rather than having any value.

According to the evidence the title to the dams became vested in the four Marcuses in 1944 as part of a transaction involving a sale to National Container Company of the property of Bedford Pulp and Paper Company, Inc., which was owned by the Marcuses. A price was agreed on, the amount of which does not appear, but it turned out to be $330,000 more than the vendee was allowed to pay under the terms of a mortgage to which it was a party. To effect the

sale the Marcuses agreed to take a conveyance of the dams at $330,-000, with the expectation that their vendee would refinance and take them over the next year, which was not done.

By deed dated March 4, 1944, Bedford accordingly conveyed to the four Marcuses the two dams and abutments, with all of the easements, riparian rights, volume of water, and other related rights in the waters of James River; and all other rights and privileges necessary to the full use of the properties conveyed, in order that the grantees might develop and use the property at Coleman Falls by providing a fall in the river there "of not exceeding a twenty-nine (29) foot head." The deed also conveyed approximately sixteen acres of land at Coleman Falls, apparently in Bedford county.

But there was expressly excepted and reserved from the deed 3.69 acres and seven cottages at Coleman Falls, and also the following:

"All easements, riparian rights, water rights, volume of water, water power and other related rights in and to the James River, the waters thereof and the use thereof, (including the right of disposal and discharge into the same) and all other rights, licenses, easements and privileges in and to the properties and rights hereinabove in this deed conveyed to the Grantees to the extent that the same may be necessary for the use and operation of the property of the Grantor at Big Island, Virginia, the mill and other structures erected thereon and any other or additional structures which may hereafter be erected thereon or for the use of the seven (7) cottages at Coleman's Falls, Virginia, above described."

The deed was also made subject to the further express condition that the grantees (Marcuses), their heirs and assigns, would not use the property conveyed so as to flow backwater on or flood the grantor's premises at Big Island or interfere with the grantor's use of its property, mill or other present or future additional structures thereon. Said deed was made subject to the further condition that the grantees, their heirs and assigns, would not interfere with the grantor's use of any of the power generating equipment at Big Island "unless prior thereto or simultaneously therewith, and continuously forever thereafter" the grantees furnish the grantor, its successors and assigns, at Big Island, 600 horsepower (subject to pro rata reduction for subnormal flow) of electrical energy transformed into voltage useable for the equipment then or thereafter installed, without charge to the grantor; and any additional electrical energy required is to be furnished at the lowest rate charged to any other person from any future development of the property conveyed.

The evidence shows that nine acres of the land included in the assessment of the Big Island dam was not owned by the Marcuses but had been conveyed by Bedford to one Bailey in 1908. Its assessment to the appellants was therefore erroneous.

It was shown by the commissioner of revenue of Amherst county that the property owned by the appellants, successors to the Marcuses, in Amherst county, consisted only of the dams, 0.4 acre in the dam abutment at Big Island, and 200 x 100 feet in the dam abutment at Coleman Falls. This witness introduced by the appellants testified that it was his opinion that the dams had a very reasonable assessment on them; that they were in good shape; that you would have to spend some money on the Coleman Falls dam, but you would have this value to start with and "If you had to build a new one it would be a big difference." He thought the Big Island dam ought to be assessed at as much as the Coleman Falls dam.

R. H. Mantiply, witness for the county, testified that he was chairman of the Board that made a reassessment of real estate for the county in 1952 and that they assessed the Big Island dam at $13,290 and the Coleman Falls dam at $20,260, which he thought were fair values for tax purposes. (The record indicates that the current assessments resulted from court action in 1955.) He thought it would cost one-half million dollars to build either of the dams. Asked whether his appraisal was based on replacement cost, he replied, "Well, we based it on today's market—what we—somewhere what we thought it would cost to replace them, yes, Sir. Absolutely."

In *Tuckahoe Woman's Club* v. *City of Richmond*, 199 Va. 734, 740, 101 S.E.2d 571, 575, we said that depreciated reproduction cost may be an element for consideration in ascertaining fair market value, but it cannot of itself be the standard for assessment. It would patently lead to unfair and improper results in this case.

James E. Marcuse, one of appellants, testified that the owners had made many efforts since 1944 to sell these properties, and that they had never received an offer to purchase at any price. He was asked by the court whether any asking price had been established and replied, "I would say that any offer will be accepted."

Section 169 of the Virginia Constitution provides that all assessments of real estate shall be at its fair market value, and § 168 requires that all taxes shall be uniform upon the same class of subjects in the taxing area. The problem of ascertaining fair market value is particularly difficult where the property to be assessed is of a kind not usually involved in sales and having no general market value.

*Tuckahoe Woman's Club* v. *City of Richmond, supra,* and cases there cited. The best that courts can do with the problem is to arrive at a fair result in the light of the evidence presented.

Here the Coleman Falls dam carries an assessment of $18,432, which is supposed to represent approximately 20% of its fair market value, or about $92,000, which is greatly in excess of its fair market value according to the facts and circumstances shown in the evidence. The evidence is convincing that the assessment of this dam should not be based on a fair market value in excess of $10,000. There is no evidence that it has a fair market value of more than that amount.

We hold that the appellants are entitled to have the assessment of this dam reduced and made on a basis of $10,000 as its fair market value, and to have reimbursement for taxes paid in excess of the amount payable on the reduced assessment for the years 1958, 1959 and 1960.

It is a fair conclusion from the evidence that the assessment of the Big Island dam did not properly take into consideration the limited interest of these appellants therein. From the conveyance of the dam to the Marcuses the grantor excepted and reserved the easement above described and restricted the use and imposed the obligations as above set out. The property of the appellants in the Big Island dam consists only of what was left after taking therefrom the easement retained therein by the grantor, and this property was subject to the conditions described.

> "When an easement is carved out of one property for the benefit of another, the market value of the servient estate is thereby lessened, and that of the dominant increased, practically by just the value of the easement; the respective tenements should therefore be assessed accordingly." *Tax Lien Co. of New York* v. *Schultze,* 213 N.Y. 9, 11, 106 N.E. 751, 752.

See also *Ross* v. *Franko,* 139 Ohio St. 395, 40 N.E.2d 664; *Metropolitan Life Ins. Co.* v. *McGurk,* 119 N.J.L. 517, 197 A. 47; *Union Falls Power Co.* v. *Marinette County,* 238 Wis. 134, 298 N.W. 598; *Gowen* v. *Swain,* 90 N.H. 383, 10 A. 2d 249; 34 Columbia L. Rev. 1397, 1435-6.

Additionally, the nine acres not owned by the appellants but included in the assessment of the Big Island property should be excluded therefrom.

The judgment appealed from is therefore reversed and the case is

remanded to the court below with directions to hear evidence and ascertain the fair market value, if any, of the property of the appellants in the Big Island dam and the 0.4 acre in the abutment, and thereupon to determine a proper assessment thereof, and to determine the proper assessment of the Coleman Falls dam on the basis of $10,000 as the fair market value thereof, and to order a refund to the appellants of taxes paid in excess of the amount properly payable on proper assessments for the three years involved herein. Code § 58-1148.

*Reversed and remanded.*