## CIRCUIT COURT OF FAIRFAX COUNTY

HCA Health Services
of Virginia, Inc., et al.

v.

Fairfax County
Board of Supervisors

July 23, 1999

Case No. (Law) 157943

BY JUDGE JANE MARUM ROUSH

This matter came on for trial without a jury on September 21, 23, 24, 28, and 29, 1998. At the conclusion of the trial, counsel requested and was granted leave to file post-trial briefs. The Court has now had the opportunity to review the pleadings, the briefs, the evidence adduced at trial, and the argument of counsel. For the following reasons, the Court finds in favor of the petitioners.

Petitioners HCA Health Services of Virginia, Inc., and Columbia Arlington Health Care System, L.L.C. (collectively the "Taxpayer") brought this action against the Board of Supervisors of Fairfax County (the "County") to correct allegedly erroneous assessments of certain real property located at 1850 Town Center Parkway in the Reston area of Fairfax County known as the Reston Hospital (the "Subject Property"). The Taxpayer seeks a reduction in the assessments for 1991 and 1993 through 1996 and a refund of real estate taxes paid for those years. For the reasons stated below, the Court finds that the County committed manifest error in its assessment of the subject property in the applicable years and will order that the assessment be corrected to $12,500,000 for each of the years in question and appropriate refunds be made pursuant to Va. Code Ann. § 58.1-3987.

*Facts*

The Subject Property consists of 14.3144 acres of land, improved by a 127-bed hospital containing 126,000 square feet (the "Reston Hospital"). The Taxpayer and the County agree on the value of the land for the applicable tax years. They disagree, however, on the value of the improvements. The Taxpayer claims that the fair market value of the Subject Property was $12,500,000 for each of the tax years in question. The County assessed the fair market value of the Subject Property at $23,657,420 in 1991, $23,432,985 in 1993, $26,768,430 in 1994, $22,339,310 in 1995,[1] and $22,447,140 in 1996.

*General Principles*

Real property is subject to local taxation in the manner prescribed by the Virginia General Assembly. Va. Const., art. X, § 4. Assessments of real estate are based on fair market value. Va. Const., art. X, § 2. Fair market value is "the price property will bring when offered for sale by a seller who desires but is not obliged to sell and bought by a buyer under no necessity of purchasing." *Nassif v. Board of Supervisors*, 231 Va. 472, 479, 345 S.E.2d 520, 524 (1986); *Board of Supervisors v. Donatelli & Klein*, 228 Va. 620, 628, 325 S.E.2d 342, 345 (1985).

A taxpayer challenging an assessment of real property bears the burden of showing either that the property is assessed at more than its fair market value or that the assessment is not uniform in its application. Va. Code Ann. § 58.1-3984. *Board of Supervisors v. Telecommunications Indus., Inc.*, 246 Va. 472, 475, 436 S.E.2d 442, 444 (1993); *Arlington County Board v. Ginsberg*, 228 Va. 633, 640, 325 S.E.2d 348, 352 (1985). A clear presumption favors the validity of the assessment and can be rebutted only upon a showing of manifest error or total disregard of controlling evidence. *Donatelli & Klein, supra*, 228 Va. at 627. A taxpayer can demonstrate manifest error by showing a substantial disparity between fair market value and assessed value of the subject property. *Telecommunications Indus., supra*, 246 Va. at 477, 436 S.E.2d at 445. A mere difference of opinion among appraisers, however, is insufficient to establish manifest error. *City of Norfolk v. Snyder*, 161 Va. 288, 293, 170 S.E. 721, 723 (1933); *City of Richmond v. Gordon*, 224 Va. 103, 112, 294 S.E.2d 846, 851 (1982). A court "must be hesitant, within reasonable bounds, to set aside the judgment of assessors;

---

[1] As reduced by the Board of Equalization. The Taxpayer challenges the assessment for 1995 as established by the Board of Equalization.

otherwise, the courts will become boards of assessment thereby arrogating to themselves the function of the duly constituted tax authorities." *Gordon*, 224 Va. at 110, 294 S.E.2d at 850; *Board of Supervisors v. Leasco Realty, Inc.*, 221 Va. 158, 165, 267 S.E.2d 608, 612 (1980).

When the court finds manifest error in the assessment or disregard of controlling evidence, the court may properly conclude that the taxpayer has rebutted the presumption of correctness of the assessment, and the Court may correct the assessment according to the evidence. *Ginsberg*, 228 Va. at 640, 325 S.E.2d at 352. In correcting the assessment, the court shall have all of the powers and duties of the authority that made the assessment. Va. Code Ann. § 58.1-3957.

## Issues

Reston Hospital is the only "for profit" hospital operating in Fairfax County. The Taxpayer contends that the County committed manifest error in assessing the Subject Property in the tax years in question because the County's assessors used a single method, the reproduction cost approach, and incorrectly calculated the cost per square foot of reproducing the Reston Hospital. According to the Taxpayer, the County calculated the estimated construction cost per square foot based on a single source, Marshall & Swift Valuation Service, which, while generally authoritative, was misapplied in this case. The Taxpayer contends that Marshall was misapplied because, contrary to Marshall's directives, the County did not consider the actual cost of constructing the Reston Hospital and neither investigated nor considered market conditions. The Taxpayer maintains that the County's assessors failed to consider a wealth of information widely available about both the Reston Hospital itself and the health care industry in general. The Taxpayer argues that if the assessors had properly considered the trends in the health care industry, they would have valued the Subject Property significantly less because it is increasingly obsolete.

The County contends that the assessors did not use the income or sales comparison approaches to value because they "lacked sufficient reliable data to evaluate the property utilizing these approaches." Defendant's Trial Brief at p. 3.

## Discussion

The evidence adduced at trial established that the County's assessors valued the improvements using a single method, the reproduction cost

approach. In order to obtain the cost per square foot valuations that formed the basis of each challenged assessment, the County used a single source, the Marshal & Swift Valuation Service (hereinafter, "Marshall").

While Marshall is a respected and authoritative reference in the field of real estate appraisal, the evidence showed that the County's assessors misapplied Marshall in several material respects.

First, the County never considered the actual costs of constructing the Reston Hospital of approximately $115 per square foot. The County never asked the Taxpayer for such information and never considered actual construction costs in any of the challenged assessments.[2] Marshall advises that:

> In establishing concepts of value, the first criterion of the reliability of any concept is its supportability. It should allow the estimate of value to be based on logical evidence and actual fact which can be supported by documentation. All items considered as indicators of value must have a firm foundation in fact. Therefore, replacement or reproduction cost figures used in valuation should be established by the action and reaction of the market and should reflect all factors that go into that market.

Petitioner's Ex. C-1.6. Marshall's includes "historical cost multipliers" which the County could have used to trend the original cost forward to the tax years in question.[3] Had the County considered actual construction costs, it would have concluded that its base costs ranging from $162 to $200 per square foot were not supported. Furthermore, the County considered no base cost comparables for hospitals.

Second, Marshall cautions that its tables cannot be applied blindly:

> If the Cost Approach is used, the market should be studied to determine actual up-to-date costs of structures, which is why the Marshall Valuation Service is based on end costs of buildings to the buyer or owner. Also, in the Cost Approach, *the market must be*

---

[2] The Court found vague and unpersuasive the testimony of the assessor who valued the Subject Property in 1991 that he considered actual construction costs.

[3] The Reston Hospital was built in between 1984 and 1986 and was expanded in 1989 and again in 1991. Therefore, the actual construction costs figures were not so old as to be meaningless. Mr. Amey, the County's assessor for 1995, testified that the original cost of the building would have been an important consideration, especially when the building was a recently constructed as was the Reston Hospital.

*studied for depreciation, for factors causing obsolescence* and as part
of a residual approach in an estimate of land value.

Petitioner's Ex. C-1.6 (emphasis added). In this case, the evidence established
that the County made no study of the market and did not consider functional
or external obsolescence in arriving at the challenged assessments of the
Subject Property. Had the County "studied the market for depreciation, for
factors causing obsolescence" as directed by Marshall, the County could not
fail to consider the dramatic changes in the health care industry which have
made the Subject Property functionally and externally obsolete in many
respects. The Court will not recount the exhaustive evidence that was adduced
at trial about the upheaval in the health care industry since the construction of
the Reston Hospital in the mid-1980s. Suffice it to say that the evidence
demonstrated that the Reston Hospital's reimbursement levels (i.e., the
percentage of billed revenue collected) have significantly decreased as a result
of the increasingly ungenerous Medicare and Medicaid reimbursement
policies that have spread to the private sector in the form of managed health
care. Furthermore, the Reston Hospital has experienced a major decline in its
inpatient census as managed health care has caused hospital stays to become
shorter and outpatient services to increase. Accordingly, the Reston Hospital,
designed as an inpatient acute care facility, has "an oversupply of acute care
beds, which translates into functional and external obsolescence" that was not
considered by the assessors.[4]

Thirdly, the County's assessors misapplied Marshall in that they
alternately deemed the improvements on the Subject Property to be "Good-A,"
" A-Excellent," " Good-B," or "B-Excellent" under Marshall's classification
categories. The evidence showed that had Marshall been properly interpreted,
the improvements would have been graded as "A-Average" for each of the
years in question.[5] The difference between whether a structure is classified as
a "good" or "excellent" and "average" yields substantial differences in the cost
per square foot that is the basis of any reproduction cost valuation.[6]

---

[4] The Court found credible the testimony of James Upchurch, an expert in hospital
design and planning, that the Reston Hospital simply would not have been
constructed as primarily an acute care facility had it been constructed in the tax
years in question.

[5] Under Marshall's classifications, only reinforced concrete buildings should be
considered a "B." Steel frame buildings, such as Reston Hospital, should be "A"
structures.

[6] For example, Marshall's per square foot costs for general hospitals are as follows
for various categories: A-Excellent, 203.74; B-Excellent, $198.26, Good-A,

The Supreme Court of Virginia has held that the "depreciated reproduction cost method may be an element for consideration in ascertaining fair market value, but it cannot of itself be the standard for assessment." *Tuckahoe Woman's Club v. City of Richmond*, 199 Va. 734, 740, 101 S.E.2d 571, 575 (1958). The use of depreciated reproduction cost as the sole basis for determining fair market value is erroneous where it yields a value in excess of what the property would sell for. *Id*. Similarly, the use of the depreciated reproduction cost method as the only basis of an assessment is improper where it "would patently lead to unfair and improper results." *First & Merchants Nat'l Bank of Richmond v. County of Amherst*, 204 Va. 584, 588, 132 S.E.2d 721, 724 (1963). Nevertheless, "where a taxing authority considers and properly rejects other methods of calculating the value of property, an assessment based on depreciated reproduction cost is entitled to a presumption of validity where that method is the only one remaining." *Tidewater Psychiatric Inst., Inc. v. City of Virginia Beach*, 256 Va. 136, 501 S.E.2d 761 (1998), citing *Norfolk & Western Ry. v. Commonwealth*, 211 Va. 692, 179 S.E.2d 623 (1971).

In this case, unlike the facts of *Tidewater Psychiatric*, there was no evidence that the County's assessors even considered any other methods of valuation besides the cost reproduction method. The County flatly states that it "lacked sufficient reliable data to evaluate the property utilizing these approaches" to apply the other methods. The County's argument ignores the fact that the assessors made no effort or inquiry to obtain "sufficient reliable data" to attempt to consider the sales comparison or income approaches to valuation. The County relies on the fact that the Reston Hospital is the only for-profit hospital in Fairfax County as justification for its failure to consider other valuation methods. Yet, the County regularly considers nationwide sales and income data in assessing other types of properties, such as regional shopping malls. Contrary to the County's position, the Taxpayer has shown that there is (and was at the time of the challenged assessments) a wealth of information about hospitals in general and the Reston Hospital in particular that is publicly available if even a cursory examination or inquiry is attempted. In addition, the Taxpayer provided the assessors with all information requested; in most cases, however, the assessors simply did not ask for actual data because they were relying instead on Marshall's tables.

---

$161.44; Good-B, $157.72, A-Average, $128.25; B-Average, $125.80. Defendant's Ex. 60. The County's assessors used a cost per square foot of $150.17 in 1991. $149.40 in 1993, $180.00 in 1994, $170.93 in 1995 and $145.91 in 1996. (The Board of Equalization set the 1995 assessment, reducing the value of the improvements from the County's original assessment.)

The Court concludes that the County's assessments for the Subject Property for the tax years in question were manifestly erroneous. Furthermore, the assessments substantially exceeded the fair market value of the Subject Property in the years in question. This case does not involve a mere difference in opinion among appraisers. The Court concludes that the Taxpayer has rebutted the presumption of correctness of the assessments. In correcting the assessments, the Court has carefully considered all of the evidence as to value that was adduced at trial. The Court agrees with the Taxpayer's valuation of the Subject Property and concludes that the fair market value of the Subject Property was $12,500,000 for each of the tax years in issue. (The Court will not recount in detail the testimony of William Beasley, III, the Taxpayer's expert appraiser. Mr. Beasley was on the witness stand for the better part of two and one-half days, and the Court concludes that his opinions were fully explored and tested at trial.)

## Conclusion

For the foregoing reasons, the Court finds in favor of the Taxpayer. The Court will enter an order correcting the assessments of the Subject Property to $12,500,000 for each of the tax years in question and ordering appropriate refunds.