COUNTY OF MECKLENBURG

V.

MARVIN O. CARTER, ET AL.

Record No. 931878

November 4, 1994

Present: All the Justices

*Russell O. Slayton, Jr. (Slayton, Bain and Clary,* on brief), for appellant.

No brief or argument for appellees.

JUSTICE WHITING delivered the opinion of the Court.

In this suit to correct an erroneous real estate tax assessment, we decide whether the taxpayers sustained their burden of showing a lack of uniformity in the general reassessment of property taxes.

Consistent with established appellate principles, we state the facts in the light most favorable to the taxpayers, the parties who prevailed in the trial court. Marvin O. Carter and Oneta W. Carter own a six-room, two-bath frame residence in the town of Boydton. Their residence is a reconstruction of a house that had been built in Dinwiddie County in the latter part of the eighteenth century, dismantled by the Carters in 1988, and reconstructed in Boydton in the period between 1988 and 1991. While reconstructing their house, the Carters added modern conveniences, including electrical wiring, plumbing, and a heating and cooling system.

The Carters do not contend that their residence was assessed for more than its fair market value in the 1991 reassessment of real estate by Mecklenburg County. Rather, they contend that the assessments of their residence for the years 1990, 1991, and 1992 were not uniform "in comparison with the assessments of other properties in the same community."

The controversy centers upon a comparison of the 1991 reassessed valuation of the Carter house with the valuations of certain other houses in the neighborhood. These reassessed valuations

were based upon appraisals prepared for the county's 1991 reassessment by an appraisal service operated by Robert Hugh Pearson, Jr., an expert real estate appraiser. Although the Carter property assessments changed during the three years in question, the changes were due partly to the completion of the house in 1991 and to the county-wide increase in assessed values of all properties in 1992. The parties were in apparent agreement that the assessment ratios between the Carter property and the properties with which it was compared remained approximately the same during the years in question.

Failing to obtain relief in their administrative appeal of these assessments, the Carters proceeded under the provisions of Code § 58.1-3984(A) by filing a petition to correct the assessment in the circuit court.* At the hearing on the Carters' petition, Fred C. Forberg, an expert real estate appraiser, and Mr. Carter testified in support of the Carters' claim.

Mr. Forberg opined that the Carters' property was not assessed in a manner consistent with that used in assessing other properties in the area. His testimony was based primarily upon (1) the fact that Mr. Forberg could find no record of the sale of any house in Boydton for more than $130,000, and (2) a comparison of the assessments of the Carter house with two immediately adjacent houses. The 2,532 square foot Carter house was assessed for $168,483; the adjacent 3,976.5 square foot house of Willoughby S. Hundley, III, was assessed for $128,469; and the other adjacent 2,330 square foot house of Frank C. Bedinger, Jr., was assessed for $103,799. Noting that the Carter house was only "about sixty percent of the size of the [Hundley] house," but of the same quality of construction, and that the Bedinger house was "about the same size" as the Carter house, but built 40 years before the Carters reconstructed their house, Mr. Forberg concluded that the

---

\* Code § 58.1-3984(A) provides in pertinent part:

Any person assessed with local taxes, aggrieved by any such assessment, may, . . . within three years from the last day of the tax year for which any such assessment is made, or within one year from the date of the assessment, whichever is later, apply for relief to the circuit court of the county or city wherein such assessment was made. . . . In such proceeding the burden of proof shall be upon the taxpayer to show that the property in question is valued at more than its fair market value or that the assessment is not uniform in its application, or that the assessment is otherwise invalid or illegal, but it shall not be necessary for the taxpayer to show that intentional, systematic and wilful discrimination has been made.

assessment of the Carter house ought to be "pretty close" to that of the Hundley house.

Mr. Carter was a former Commissioner of Revenue of Mecklenburg County experienced in the appraisal of properties. His testimony was based primarily upon the summaries of the Pearson appraisal reports on six nearby houses and upon the records of recent sales of three other properties in the vicinity of the Carter property. Two of the six summaries covered the Hundley and Bedinger houses, and four covered other houses in the Carters' neighborhood. All but one of these six houses were larger than the Carter house, but all had been appraised and assessed for less than the Carter property.

Mr. Pearson described the methodology consistently applied by his company in preparing their appraisals for the reassessments. Under Pearson's supervision, the appraisers secured detailed information of the size, quality, and condition of the improvements on each piece of real property in the county. With that information, the appraisers computed the cost of reproducing those improvements and adjusted that cost to the present fair market value of such improvements by a consideration of their age, condition, usability, and location, as well as any unusual factors affecting their fair market value.

Mr. Pearson also testified that the appraisers had familiarized themselves with the fair market value of county real estate by ascertaining the sale prices and conditions of each property that had been sold in the county during the appraisal period and "for the couple of years" preceding the appraisal period. They then tested their uniform method of adjusting the reproduction costs of the improvements to their current market value by comparing the results of those adjustments with recent sale prices of comparable county properties and making any modifications required to conform their adjusted values to current fair market values. And Mr. Pearson noted that the six recent sales of properties in Boydton, referred to by Mr. Carter in his testimony, confirmed that the appraisal results were very close to market value.

Comparing the appraisals of the Hundley and Bedinger houses with that of the Carter house, Mr. Pearson noted that the grade of construction of the Bedinger house was lower than that of the Carter house and that the Bedinger house was older than the reconstructed Carter house. In comparing the Hundley house, Mr. Pearson noted that its age, condition, excessive size, and location

near the county welfare office resulted in a deduction of 51.1% from the cost of reproduction to arrive at fair market value. On the other hand, the reproduction cost of the Carter house was adjusted by only 3.7% because of its recent construction and other factors.

At the conclusion of the evidence, the trial court concluded that the Carter assessment was not uniform in relation to other properties in Boydton. Accordingly, it reduced the assessment of the Carters' house to 98% of the assessment of the Hundley house, ordered an appropriate refund of the excess taxes paid during the years in question, plus interest, and directed that this ratio continue until the next general reassessment. The county appeals.

We have summarized the controlling principles as follows:

> There is a clear presumption that an assessment is valid; the presumption can be rebutted only upon a showing of manifest error or total disregard of controlling evidence. *City of Richmond v. Gordon*, 224 Va. 103, 110, 294 S.E.2d 846, 850 (1982). The burden is on the taxpayer to show that his property is assessed at more than fair market value or that the assessment is not uniform in its application. Code § 54-1145, now § 58.1-3984 (Repl. Vol. 1984).

> A trial court which finds manifest error in the assessment or disregard of controlling evidence may properly conclude that the presumption has been rebutted and fix the assessment in accordance with the evidence. Code § 58-1148, now § 58.1-3987 (Repl. Vol. 1984); *see Harrisonburg City v. Taubman*, 212 Va. 28, 30, 181 S.E.2d 654, 656 (1971). The case then comes to us with the presumption that the trial court's ruling based upon its findings of fact is correct. This presumption is rebuttable if the ruling is plainly wrong or without evidence to support it. *Donatelli & Klein*, 228 Va. [620] at 627, 325 S.E.2d [342] at 345 [(1985)].

*Arlington County Board v. Ginsberg*, 228 Va. 633, 640, 325 S.E.2d 348, 352 (1985).

In this case, we find that the trial court's ruling is plainly wrong and without evidence to support it. There is no evidence that the methodology used was erroneous, or that it was not followed in appraising the Carter property and each property with which it was compared. Nor is there any evidence that the fair

market values of all these properties were other than those shown on the appraisals.

Further, even if the specific comparisons of the Carter house with the Hundley and Bedinger houses made by Mr. Forberg and Mr. Carter were based on a competent study of their current market values, such comparisons are insufficient to establish a lack of uniformity in the assessment of the Carter house. As we noted in *City of Roanoke v. Gibson*, 161 Va. 342, 347, 170 S.E. 723, 725 (1933), "It is not enough to show that the assessment is excessive as compared with an assessment against A, or against B. It must plainly appear that it is out of line with methods of valuation adopted in the taxing district as a whole."

Accordingly, we conclude that the Carters have not borne their burden of proving the lack of uniformity of their assessment. Therefore, we will reverse the trial court's judgment and dismiss the Carters' petition.

*Reversed and dismissed.*