Present:  All the Justices

BOARD OF SUPERVISORS OF
FAIRFAX COUNTY

v.  Record No. 992459   OPINION BY JUSTICE BARBARA MILANO KEENAN
                                        September 15, 2000
HCA HEALTH SERVICES OF
VIRGINIA, INC., ET AL.


            FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                        Jane M. Roush, Judge


    In this appeal, we consider whether the trial court erred:

(1) in holding that the Board of Supervisors of Fairfax County

(the Board) committed manifest error in making certain real

estate tax assessments of a hospital property; and (2) in

correcting the assessments under the evidence presented.

    HCA Health Services of Virginia, Inc. (HCA) filed a

petition in the trial court under Code § 58.1-3984 alleging that

the Board erroneously assessed its property, known as Reston

Hospital (the hospital), in 1991, and in 1993 through 1996.[1]  The

Board assessed the value of the hospital property in those years

in a range between about $22,340,000 and $26,770,000.  HCA

alleged, among other things, that the assessments exceeded the

property's fair market value, which HCA contended was

_____

    [1]HCA Health Services of Virginia, Inc. was the owner of
Reston Hospital from January 1, 1991 through October 31, 1996,
when Columbia Arlington Health Care System, L.L.C., acquired the
hospital as part of a joint venture.  We will refer to these two
property owners collectively as HCA in this opinion.

$12,500,000 in each of the five years at issue. HCA and the Board agreed at trial on the value of the land on which the hospital was constructed but disagreed on the value of the improvements to the land.

The hospital is a 127-bed facility situated on 14.3 acres in Fairfax County (the County) and contains 126,400 square feet of floor space. The hospital was built in 1986 at a cost of $13,841,049, or $115.82 per square foot. The hospital building was expanded in 1989 and 1991. Between 1990 and 1996, the hospital's net revenues increased each year, from about $43.5 million in 1990 to about $72 million in 1996. The hospital is the only general hospital operating in the County that is not tax-exempt.

In response to HCA's petition, the Board filed a plea in bar, asserting that HCA's cause of action on the 1991 assessment was barred by the limitation period of Code § 58.1-3984. In an amendment to the statute effective July 1, 1991, the limitation period for challenging real estate tax assessments was reduced from five years to three years.[2] HCA filed the subject petition challenging the 1991 assessment in the trial court in December 1996.[3] The Board argued that the three-year limitation period

---

[2]See 1991 Va. Acts, ch. 8.
[3]The limitation period provided in Code § 58.1-3984 runs from the last day of the tax year for which an assessment is made.

2

applied because HCA's cause of action on the 1991 assessment arose in July 1991 when the taxes were due and paid.

HCA asserted that the July 1991 amendment to Code § 58.1-3984 did not apply to its claim regarding the 1991 assessment, because the five-year limitation period was in effect on the date of the assessment, January 1, 1991. The trial court agreed with HCA, ruling that the "injury occurs at the time of the assessment" and, thus, that the five-year statute of limitation applied.

At a bench trial, the evidence showed that for the years at issue, the County's real estate appraisers used the depreciated reproduction cost approach to valuation to determine the fair market value of the hospital property. They did not use either of two other common methods of valuing real estate, the sales comparison approach and the income capitalization approach.

In applying the depreciated reproduction cost method of valuation, the County's appraisers used guidelines contained in a manual developed by the Marshall Valuation Service (the Marshall manual). These guidelines incorporate cost data routinely used by real estate appraisers. See Appraisal Institute, The Appraisal of Real Estate 350-51 (11th ed. 1996). The Marshall manual uses five general building classifications, which are termed Classes A, B, C, D, and S, based on a building's structural composition. Within each general building

3

classification, the Marshall manual provides for the further classification of buildings as "excellent," "good," "average," and "low cost," based on the quality of construction, and assigns a base cost per square foot for each of these classifications.

In each year at issue, the County appraisers classified the hospital using the Marshall manual's classification system. The appraisers adjusted the base cost per square foot stated in the Marshall manual to reflect such factors as the number of floors in the building, recent changes in construction costs, and variations in construction costs based on location. The appraisers multiplied the adjusted cost per square foot, or reproduction cost, by the number of square feet in the hospital to determine the "base building cost."

After consulting the depreciation table in the Marshall manual, the County appraisers deducted a percentage from the "base building cost" for depreciation, based on the age of the building and the appraisers' estimation of its expected life. The building depreciation percentages listed in the Marshall manual reflect typical physical depreciation as well as functional obsolescence, which represents any loss in value arising from a building's lack of utility or desirability. The appraisers limited their deduction for functional obsolescence to the percentages listed in the Marshall manual and they did

4

not make any deductions for external obsolescence, which represents any loss in value resulting from causes unrelated to the subject property.  The appraisers applied depreciation deductions ranging from 1% to 5% in the years at issue to arrive at the depreciated reproduction cost of the building.

For 1991, the County's appraiser, Walter Girod, rated the hospital building as "Class B - Excellent," and multiplied the building's square footage by a reproduction cost of $175 per square foot.  Girod then applied a 1% depreciation reduction and concluded that the value of the improvements to the land was $19,089,015.[4]  When the land value was included, the total assessed value of the property in 1991 was $23,657,420.

Girod testified that there are several sources of information for determining the actual construction costs of a hospital.  He stated that these costs are an important consideration in assessing the value of a property, but acknowledged that he could not remember whether he considered actual construction costs when performing the 1991 appraisal.  Girod also testified that he did not consider any trends or changing conditions affecting the health care industry in making his appraisal.

---

[4]In each year at issue, the County's appraisals of the total value of the hospital's improvements included the value of the building, as calculated using the Marshall manual, plus $250,000 to reflect the value of certain paved areas of the property.

David Williams performed the 1993 and 1994 appraisals for the County. In 1993, Williams assigned a "Class A - Good" rating to the hospital building. His use of this rating resulted in a reproduction cost calculation of $166 per square foot, to which he applied a 2% depreciation deduction. Williams testified that since the hospital was continuing to expand, he made no additional allowance for obsolescence. In 1993, he concluded that the value of the improvements to the land was $18,756,475, and that the total value of the property was $23,432,985.

Williams testified that at the time he made the 1993 assessment, he "was not aware of" the hospital's actual construction costs. He did not attempt to obtain this information from HCA and did not investigate whether there was external obsolescence or any other market factor affecting the value of the hospital.

In 1994, Williams changed the classification of the building from "Class A - Good" to "Class B - Excellent" because he concluded that the hospital building had some characteristics of both classes A and B. Williams' use of the "Class B - Excellent" rating resulted in a reproduction cost calculation of $200 per square foot. After applying a 4% depreciation deduction, Williams concluded that the value of the improvements

6

to the property was $22,091,920.  The total assessed value of the property in 1994 was $26,768,430.

Williams testified that when making the 1994 appraisal, he did not consider the hospital's actual construction costs and did not request that information from HCA.  He stated that in determining depreciated reproduction costs, he consulted only the Marshall manual and did not investigate any effect that market factors may have had on the hospital's value.

David S. Amey performed the County's 1995 appraisal on the property.  He assigned a "Class A - Excellent" rating to the building, which resulted in a reproduction cost calculation of $197.61 per square foot, and he applied a 5% depreciation deduction to this amount.  Amey testified that he inspected the hospital building and did not observe any signs of abnormal physical depreciation or functional obsolescence.  After reviewing the hospital's gross receipts and noting that its income was increasing steadily, Amey concluded that an additional depreciation deduction was not warranted.  He determined that the value of the improvements was $21,606,110, and that the total value of the property was $26,282,620.

HCA appealed from the 1995 assessment to the County's Board of Equalization (BOE), asserting that the fair market value of the property was $11 million.  In support of its appeal, HCA provided the County with a list of sales of hospitals in

7

Virginia and other states. Amey testified that in response to HCA's appeal, he requested additional information about the listed hospitals from HCA so that he could perform a sales comparison analysis. He explained that in order to perform even a "minimal [sales] comparison," he needed to know the gross income of each hospital so that a "gross income multiplier" could be calculated. Amey testified that when HCA did not provide the requested information, he concluded that the depreciated reproduction cost analysis method was "the most valid approach" for valuing the property because there was insufficient market data available to perform either a sales comparison or a capitalization of income analysis.

Amey testified that the actual construction cost of a building is relevant to the determination of a property's fair market value and should be considered when assessing a property such as the hospital building that was built "fairly recently." Amey explained that actual construction costs may be used to determine present reproduction costs by multiplying the actual costs by certain cost indexes. However, he testified that he was not certain whether he had done these calculations when performing the 1995 appraisal. Amey stated that during HCA's appeal to the BOE in 1995, he considered the building costs of construction projects at two "non-profit" hospitals in Fairfax County, which confirmed his judgment that the cost per square

8

foot calculation that he had applied to the hospital building was reasonable.[5]

Lisa Altoft performed the County's 1996 appraisal of the hospital property. Using a "Class A - Good" designation for the building, she calculated that the base reproduction cost per square foot was $162.12. She applied a 5% depreciation rate to that amount and concluded that the value of the property improvements was $17,750,630. The total assessed value of the property in 1996 was $22,447,140.

Richard Carroll Green, Jr., assistant director of the County's Department of Taxation, testified that the County's appraisers did not have access to a central research file on hospital valuations. He stated that he was unaware of any efforts by the County appraisers to track trends in the health care industry, and that he had no personal knowledge of any emerging problems facing that industry. Larry L. Lewis, the County's supervising appraiser for the Taxation Department's commercial property division, testified that the County's appraisers routinely consider national sales data when appraising other types of commercial property, such as regional shopping malls.

_____

[5]As a result of the 1995 appeal, the BOE reduced the total assessment of the property to $22,339,319, by re-classifying the building as "Class A - Good."

HCA presented the testimony of James Kenneth Upchurch, who qualified as an expert witness on the subject of hospital design and planning. Upchurch testified that the Reston Hospital had experienced some obsolescence over recent years. He explained that since the hospital was first planned in 1983, public and private insurers had made "major changes" in the methods they used to reimburse hospital insurance claims. Upchurch stated that as a result of these reimbursement changes, the demand for hospital inpatient services had decreased while the demand for outpatient services had greatly increased. To illustrate this fact, he testified that about 80% of the surgical procedures performed at the hospital are done on an outpatient basis. He stated that if the hospital had been constructed in any of the tax years at issue, it would have been designed differently to accommodate such demands for outpatient services.

Upchurch testified that the hospital design was based on an "old model" of health care that does not adequately meet the needs of the current large volume of outpatients. He explained that unlike the design of the Reston hospital, modern design practices provide for outpatient services on the ground floor of a hospital building, with large common areas, convenient patient access, and separation of these facilities from the inpatient areas. Upchurch stated that the Reston Hospital design was deficient in several areas, including the main lobby, the

10

waiting rooms for surgery and radiology, the cafeteria, and the facilities for support services. He also explained that the hospital had an insufficient number of private rooms and critical care rooms, and that it was not in compliance with requirements for accessibility by disabled persons.

HCA also presented the testimony of William H. Beazley, III, who qualified as an expert witness on the valuation of hospitals. Beazley had prepared an appraisal report in which he concluded that the total fair market value of the hospital property for each of the five years at issue was $12,500,000. In reaching this conclusion, Beazley valued the hospital using a depreciated reproduction cost approach, an income capitalization approach, and a sales comparison approach.

Beazley explained that the goal of an appraisal is to determine a property valuation that reflects all factors influencing the market value of the property. According to Beazley, if an appraiser does not have a solid understanding of the hospital industry and the market in which hospitals operate, the use of a depreciated reproduction cost approach has a "great potential for error" since reproduction costs are not necessarily equal to a hospital building's value. He explained that the use of a cost approach to appraise hospital buildings is "typically deficient" because of "weak treatment" of all potential factors influencing obsolescence.

11

Beazley explained that market analysis data concerning the hospital industry provide an appraiser vital information for use in all three approaches to valuation. In a depreciated reproduction cost analysis, market data provide information about current building costs as well as market conditions that are relevant to determining functional and external obsolescence. Beazley noted that the Marshall manual directs appraisers to include a market study when conducting a depreciated reproduction cost analysis.

Beazley testified that the amount of market data available concerning health care facilities exceeds the amount of data available for any other type of property he has appraised. He explained that because of government regulation of the health care industry, hospital income and expense information is available from various government agencies. Beazley also stated that there are more national sales of hospitals than sales of regional shopping malls, and that a "considerable amount" of information concerning hospital sales is readily available. He identified numerous publications and resources available on the "Internet" that provide financial data, utilization statistics, and discharge and occupancy figures for a few thousand hospitals, including Reston Hospital.

In his use of the depreciated reproduction cost method of valuation, Beazley used a "Class A - Average" rating for the

12

hospital building. He calculated that the hospital was entitled to depreciation deductions ranging between 40.08% and 48.63% for the five years at issue. These depreciation deductions included physical depreciation percentages ranging between 12.5% and 25%, and external obsolescence percentages ranging between 23.63% and 27.58%. These calculations reflected Beazley's determination that the hospital had 44 excess beds and 39,885 square feet of excess or obsolete floor space.

As part of his depreciated reproduction cost approach, Beazley testified that he analyzed the actual construction costs of the hospital in 1986, as well as the actual costs of the 1988 and 1991 additions. He explained that he applied a "trending factor" to these costs to determine a present cost value for the hospital, which he compared to the valuations he reached using other methods of cost analysis.

Beazley also estimated the hospital's value using an income capitalization analysis. Under this approach, Beazley determined the net revenues attributable to the hospital's real property, as distinct from its personal property, and multiplied that net income by a capitalization rate to arrive at a current or "actual" value of the hospital. Beazley testified that he treated the hospital's outpatient revenue as "business revenue." Therefore, rather than including the actual outpatient revenue in his calculation of the hospital's net income, Beazley imputed

13

rent to the hospital from the outpatient service area occupying 12,660 square feet of the building. He also calculated a ratio that he used to allocate all the hospital's expenses between outpatient and inpatient services.

Beazley conducted a separate, sales comparison analysis to test the reasonableness of the valuations he reached using the depreciated reproduction cost and income capitalization approaches. He considered eight "arms-length" sales of hospitals that occurred between 1991 and 1996, including sales of two hospitals in Virginia that are not tax-exempt. After analyzing each sale, he arrived at a valuation of about $100 per square foot for the Reston Hospital.

The Board presented the testimony of Courtney B. Lees, who qualified as an expert witness in the valuation of health care facilities, concerning her review of Beazley's deposition testimony and appraisal report. She stated that the methods Beazley used to determine depreciation and obsolescence were flawed, and that Beazley improperly based his calculation of physical deterioration on a 40-year life expectancy for the hospital, when a 45-to-50-year life expectancy was more accurate.

Lees also disagreed with Beazley's deductions for external obsolescence. She testified that such deductions` should be taken only if there has been a dramatic decline in hospital

14

occupancy combined with a loss of profitability.  She stated that neither of these factors affected the hospital's business at the time of the challenged assessments.

Lees noted that in 1986, when the hospital was constructed after a state regulatory agency determined a need for 127 beds, the statewide hospital occupancy rate was 60%.  In 1991, the Reston Hospital's occupancy rate had declined to 53%.  Lees stated that this 7% decline was not "dramatic" and would not result in the 35% decrease in required beds on which Beazley had based his obsolescence analysis.  She noted that from 1990 to 1997, the hospital had experienced increased total revenues and an increase in its profit margin.  Lees also testified that Beazley's imputation of rent for outpatient services and his allocation of expenses between inpatient and outpatient services were based on unexplained and unsupported formulas that were inconsistent with other calculations presented in his report.

The trial court issued an opinion letter in which it concluded that the Board had committed manifest error in its assessments of the hospital property in the five years at issue. The trial court ruled that the County's appraisers committed three errors in applying the depreciated reproduction cost method of valuation.  First, they failed to consider the actual cost of constructing the hospital in 1986, which was $115 per square foot.  Second, the County's appraisers failed to consider

15

market factors impacting functional and external obsolescence. Third, they misinterpreted the building classification guidelines in the Marshall manual and failed to classify the hospital building as a "Class A - Average" structure.

The trial court also concluded that the County's appraisers erred by making "no effort or inquiry" to obtain sufficient data to consider any method of valuation other than the depreciated reproduction cost approach. The court noted that HCA showed that there is a "wealth of information" publicly available concerning hospitals, including Reston Hospital, "if even a cursory examination or inquiry is attempted."

The trial court held that the Board's assessments substantially exceeded the fair market value of the property, and that its actual fair market value was $12,500,000 for each of the years at issue. The trial court entered final judgment correcting the assessments and ordering the Board to refund to HCA about $687,000.

On appeal, the Board first argues that the trial court erred in holding that a five-year limitation period governed HCA's challenge to the 1991 assessment because the cause of action accrued when the taxes were due or paid, rather than on the date of the assessment. The Board next contends that the trial court erred in concluding that the Board committed manifest error in determining the assessments at issue. The

16

Board asserts that the County appraisers' use of the depreciated replacement cost method as the sole method of valuation was proper, and that the County appraisers did not have available for their use sufficient reliable data to permit the application of other valuation methods. The Board also asserts that the evidence did not show that the assessments of the hospital were inconsistent with proper and accepted appraisal practices. We disagree with the Board's arguments.

Initially, we conclude that the trial court did not err in holding that the five-year limitation period of former Code § 58.1-3984 applied to HCA's challenge to the 1991 assessment. Under Code § 58.1-3281, real estate is assessed as of January 1 of each year. HCA's cause of action to correct the 1991 assessment arose on the effective date of that assessment, January 1, 1991, when the five-year statute of limitations of former Code § 58.1-3984 still applied. Since HCA filed its petition challenging the 1991 assessment within five years of the end of the tax year in which the challenged assessment was made, its petition contesting the 1991 assessment was not time barred. See Code § 58.1-3984.

We next consider general principles that govern the review of a petition for correction of erroneous assessment of real estate taxes. Under Art. X, § 2 of the Constitution of Virginia, a taxing authority is required to assess real estate

at its fair market value. Generally, when a taxpayer challenges a real estate tax assessment by filing a petition in a circuit court to correct the assessment, the court is required to afford a presumption of correctness to the taxing authority's assessment of the real estate's fair market value. Tidewater Psychiatric Inst., Inc. v. City of Virginia Beach, 256 Va. 136, 140-41, 501 S.E.2d 761, 763 (1998); County of Mecklenburg v. Carter, 248 Va. 522, 526, 449 S.E.2d 810, 812 (1994); Board of Supervisors v. Telecommunications Indus., Inc., 246 Va. 472, 475, 436 S.E.2d 442, 444 (1993); Arlington County Bd. v. Ginsberg, 228 Va. 633, 640, 325 S.E.2d 348, 352 (1985). The burden is on the taxpayer to rebut this presumption by showing that the taxing authority committed manifest error or totally disregarded controlling evidence. Code § 58.1-3984; Carter, 248 Va. at 526, 449 S.E.2d at 812; Telecommunications Indus., 246 Va. at 475, 436 S.E.2d at 444; City of Richmond v. Gordon, 224 Va. 103, 110, 294 S.E.2d 846, 850 (1982).

Once a trial court finds that a taxing authority committed manifest error in determining an assessment, the court is authorized to correct the assessment based on the evidence. Code § 58.1-3987; Carter, 248 Va. at 526, 449 S.E.2d at 812-13; Telecommunications Indus., 246 Va. at 476, 436 S.E.2d at 444; Board of Supervisors v. Donatelli & Klein, Inc., 228 Va. 620, 627, 325 S.E.2d 342, 345 (1985). When the trial court makes a

18

finding of manifest error and corrects an erroneous assessment, the trial court's judgment comes to us with a presumption that the court's ruling based on its findings of fact is correct. Carter, 248 Va. at 526, 449 S.E.2d at 812-13; Donatelli & Klein, Inc., 228 Va. at 627, 325 S.E.2d at 345. We will set aside the trial court's judgment only if it is plainly wrong or without evidence to support it. Carter, 248 Va. at 526, 449 S.E.2d at 813; Telecommunications Indus., 246 Va. at 476, 436 S.E.2d at 444.

When a taxing authority uses a depreciated reproduction cost approach as the sole method of assessing fair market value, after the taxing authority has considered but properly rejected the use of other valuation methods, the assessment is entitled to a presumption of correctness. Tidewater Psychiatric, 256 Va. at 142, 501 S.E.2d at 764; Norfolk and W. Ry. v. Commonwealth, 211 Va. 692, 700-01, 179 S.E.2d 623, 629 (1971). Here, the evidence showed that the County's appraisers concluded that they lacked reliable data to consider other methods of valuation, even though they had not made an effort to acquire the data necessary to perform appraisals based on such other methods. These unsubstantiated conclusions by the County's appraisers were insufficient to show that the County considered and properly rejected other methods of calculating the value of the hospital property. Thus, under the rule in Tidewater

Psychiatric, the Board's assessment of the hospital based solely on the depreciated reproduction cost method of valuation was not entitled to a presumption of correctness. 256 Va. at 142, 501 S.E.2d at 765; Norfolk and W. Ry., 211 Va. at 700, 179 S.E.2d at 629.

Since this assessment was not entitled to a presumption of correctness, HCA was not required to demonstrate that the Board committed manifest error in making the assessment, but was only required to meet the lesser burden of proving that the Board's assessment was erroneous. Nevertheless, the trial court held that the Board committed manifest error in its assessment based on the manner in which the County's appraisers conducted their depreciated reproduction cost analysis. We conclude that the evidence supports the trial court's determination.

First, the trial court held that the County's appraisers erred in failing to consider actual construction costs in performing their depreciated reproduction cost analyses. Two of the County's appraisers, Walter Girod and David Amey, conceded that actual construction costs are a relevant factor in making an assessment under the depreciated reproduction cost method and should be considered when using this method. The record fails to show, however, that any of the County's appraisers considered the actual construction costs of the hospital in performing the appraisals under the depreciated reproduction cost method.

Second, the trial court held that the County's appraisers erred in failing to consider market factors affecting obsolescence and depreciation when applying the depreciated reproduction cost approach. Beazley's testimony was undisputed that an understanding of market factors causing obsolescence is essential to performing an accurate cost valuation of a hospital, and that the Marshall manual directs appraisers to include a market study in performing a depreciated reproduction cost analysis. While the County's appraisers and Tax Department supervisors testified that they were not aware of any such market factors affecting Reston Hospital or the health care industry in general, the evidence also demonstrated that these witnesses had made no inquiries or efforts to learn about such factors.[6]

Third, the trial court held that the County's appraisers erred in failing to consider and properly reject other methods of valuation before deciding to use the depreciated reproduction cost approach as its sole method of valuation. In Tidewater Psychiatric, we explained that use of the depreciated reproduction cost approach as the sole method for determining fair market value is erroneous only when the taxing authority

---

[6]David Amey testified that he considered performing a sales comparison analysis in response to HCA's appeal of the 1995 assessment to the BOE, not as part of his appraisal of the property.

fails to consider other factors that demonstrate that the use of this method plainly leads to unfair and improper results.  256 Va. at 142, 501 S.E.2d at 764.

As stated above, the evidence showed that the County's appraisers failed to consider market factors in the health care industry that bore on the issues of obsolescence and depreciation.  Beazley's testimony, which the trial court accepted, established that the failure to consider these factors resulted in a gross underestimation of the depreciation of the hospital building that led to unfair and improper results in the Board's assessments.

Lastly, the trial court held that the County's appraisers improperly failed to classify the hospital building as a "Class A – Average" structure under the Marshall manual guidelines. Although the evidence showed that the hospital should not have been classified as "Class B – Excellent" in 1991 and 1994 since it was not a concrete structure, the evidence also showed that the classification of a building under the Marshall manual guidelines requires an appraiser to exercise professional judgment.  The record does not demonstrate that "Class A – Average" was the only reasonable classification for the hospital building that an appraiser could make in the exercise of such judgment.  Thus, we conclude that the evidence does not support the trial court's conclusion on this one issue.  This

22

determination, however, does not require reversal of the trial court's holding of manifest error since the other evidence recited above is sufficient to support the trial court's conclusion.

Since the evidence supports the trial court's conclusion that there was manifest error in the Board's assessments of the hospital property, we next consider whether the evidence supports the trial court's correction of the assessments. See Code § 58.1-3987; Carter, 248 Va. at 526, 449 S.E.2d at 812-13; Telecommunications Indus., 246 Va. at 476, 436 S.E.2d at 444. We disagree with the Board's contention that the trial court erred in adopting Beazley's valuation methodology and his testimony concerning the fair market value of the hospital property because the testimony was based on unsupported, speculative assumptions. Beazley testified in great detail, explaining the methodology he used to arrive at his valuations using cost, comparable sales, and capitalization of income approaches. Contrary to the Board's assertion, this testimony included a detailed consideration of the actual construction costs of the hospital. In response to Beazley's testimony, the Board presented the testimony of Lees, who rendered an opinion that there were errors in Beazley's valuation methods and conclusions. Thus, the issue of the proper valuations of the hospital property presented a "battle of experts," and we will

defer to the trial court's judgment of the weight and credibility to be given their testimony.  See Tidewater Psychiatric, 256 Va. at 141, 501 S.E.2d at 764; Norfolk and W. Ry., 211 Va. at 700, 179 S.E.2d at 629.

We also note that the Board relied on the testimony of the County's appraisers who had performed the appraisals at issue to refute HCA's evidence of the fair market value of the hospital. Since the Board's evidence in this regard was based on the County appraisers' flawed application of the depreciated reproduction cost approach, we cannot say that the trial court was plainly wrong in adopting HCA's evidence and correcting the assessments in accordance with that evidence.  See Tysons Int'l Ltd. Partnership v. Board of Supervisors, 241 Va. 5, 12, 400 S.E.2d 151, 155 (1991); Smith v. Board of Supervisors, 234 Va. 250, 258, 361 S.E.2d 351, 356 (1987).

Finally, we find no merit in the Board's argument that it is entitled to prevail on appeal because HCA did not present expert testimony establishing that the County's appraisers deviated from accepted appraisal standards when performing the contested appraisals.  Beazley testified, without objection, that when an appraiser fails to consider market forces in the health care industry when determining the fair market value of a hospital, the credibility of the appraisal is undermined.  As stated above, Beazley also testified that the Marshall manual

24

directs that appraisals based on a depreciated reproduction cost approach include a market study for depreciation factors such as obsolescence. The record shows that the County's appraisers did not consider market forces in the health care industry or conduct a market study to determine depreciation related to those market factors. The County's appraisers also did not consider actual construction costs in performing their depreciated reproduction cost analyses, even though the County's own evidence showed that such costs should be considered when performing appraisals under this approach. The trial court, sitting as trier of fact, found this evidence persuasive on the issue of the County's application of the depreciated reproduction cost approach, and we will not disturb that finding on appeal.

For these reasons, we will affirm the trial court's judgment.

<u>Affirmed.</u>