Present:  All the Justices

SHOOSMITH BROS., INC.

v.  Record No. 032572    OPINION BY JUSTICE ELIZABETH B. LACY
                                    September 17, 2004
COUNTY OF CHESTERFIELD

FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Michael C. Allen, Judge

In this appeal, we consider whether the trial court erred in sustaining the County's assessment of real property operated as a landfill.

I.

Shoosmith Brothers, Inc. (Shoosmith) owns a 1,163 acre parcel of land in Chesterfield County.  Although the parcel is designated as a single tax parcel for real estate taxation purposes, the parcel is divided into separate tracts based on the use of those tracts to determine its fair market value.

For the past 27 years Shoosmith has used 200 acres of the parcel as a sanitary landfill under a conditional use permit Shoosmith obtained from the County and a Solid Waste Facility Permit it obtained from the Virginia Department of Environmental Quality.  In 1993, the County applied the income capitalization method (income method) of assessment to the landfill property and assessed the 200 acres at a fair market value of $12,987,600.  The 1993 valuation has remained

constant and was the assessed value of the landfill for the 2001 tax year.

In March 2001, Shoosmith filed an Application for Review of the Assessment of the landfill property asserting that the property was not assessed at its fair market value because "business income [was] used rather than the real estate's rental income to estimate real estate value." Following a hearing, the Board of Equalization upheld the County's use of the income method and the 2001 assessment of $19,859,935 for the entire 1,163-acre parcel. Shoosmith appealed that decision to the circuit court, claiming the County improperly assessed the 200-acre landfill property.

At trial, Shoosmith's expert witness, Ivo H. Romenesko, testified that, in his opinion, the County's assessment included the value of the property and of Shoosmith's ongoing landfill business, which meant the County was assessing the value of the permits. According to Romenesko, the fair market value of the landfill property should be based on the value of the land without the permits. To determine the proper value of the 200 acres, Romenesko examined the sale of four properties zoned agricultural or residential which Romenesko considered comparable and concluded that the value of the

landfill property was approximately $5,000 per acre or $1,000,000.[1]

The County's Commercial and Industrial Appraisal Supervisor, Jeffrey Overbey, testified that he applied the income method of assessment, although it was "not the only approach," because it was "the preferred approach and the most accurate approach." He testified that he did not consider the income method as an appraisal of a "going concern," and that, while the state and county permits affected the value of the property, the permits were not separately valued for real estate purposes. Overbey testified that income-producing property such as a landfill is "bought and sold based on the income stream that it generates" and that the income method of assessment rather than the cost method is preferable. He also stated that the sales of undeveloped agricultural or residential land that Shoosmith's expert advanced were not comparable sales because their values were not indicative of the market value of income-producing property.

Overbey explained that, after determining that the highest and best use of the property was that of a landfill, he conducted the assessment following the methodology

---

[1] The properties were (1) 256.82 acres at $3,349 per acre zoned residential (formerly agricultural) but not yet serviced by sewer and water; (2) 96.68 acres at $4,655 per acre zoned

prescribed in an article styled "Appraisal of Sanitary Landfills," by Robert L. Foreman, MAI, SRPA, a professional real estate appraiser, which appears as Chapter 50 of the third edition of the Encyclopedia of Real Estate Appraising at pages 1077-1092 (Edith J. Friedman, ed., 1978) (Foreman article). The Foreman article stated that "[t]he only appropriate method of appraising a sanitary landfill is to arrive at the present worth of the income stream . . . [plus] the present worth of the reversion after the site has been filled" and that "[s]ophisticated assessing agencies" appraise a landfill on this basis. Id. at 1083, 1085.

The methodology set out in the Foreman article requires determining the annual gross income of the landfill property, deducting the costs expended to produce the income to determine the "net income" generated by the real estate, projecting the net income for the useful life of the landfill property, and discounting the projected income stream to the present value of the real estate by using a discount rate. Id. at 1083. Applying this formula, Overbey estimated the annual gross income of the landfill property at $13,125,000 and applied an estimated costs expended factor of 75.2%, which

agricultural; (3) 27.60 acres at $5,616 zoned agricultural; and (4) 42.90 acres at $5,828 per acre zoned agricultural.

4

resulted in an estimated net income of $3,250,000.[2]  Overbey then projected the net income over the remaining life of the landfill, approximately 25 years, and applied a 25% discount rate.  Overbey assessed the value of the 200 acres at $12,987,600.

J. Brian Bergan, a property tax consultant for the Commonwealth who consulted with Chesterfield County on the Shoosmith landfill assessment, testified that the cost and comparable sales methods of assessment were not appropriate for assessing Shoosmith's landfill because there was "no substantiation" for the cost methodology and a lack of comparable sales that could be considered.

Following the hearing, the circuit court concluded that the County had used an appropriate assessment methodology and that the assessment was a "reasonable assessment of the fair market value" of the landfill property.  Shoosmith filed an appeal raising a number of assignments of error.  We granted the appeal, limited to whether the trial court erred in (1) holding that the County's method of assessment was appropriate and that the County Assessor's assessment of the property was proper; (2) upholding the County's 2001 assessment of the 200-acre landfill property; or (3) refusing to accept Shoosmith's

---

[2] Overbey used estimates of the revenue and expenses because Shoosmith declined to provide actual figures in

expert testimony of the fair market value of the landfill property.

II.

The parties do not dispute the principles which we apply when reviewing a challenge to a tax assessment. We presume that a county's tax assessment is correct, and the burden is on the taxpayer to rebut the presumption by showing by a clear preponderance of the evidence that its property is assessed at more than fair market value. Shoosmith agrees that it must show that the County committed manifest error or totally disregarded controlling evidence in its determination of fair market value. Tidewater Psychiatric Institute, Inc. v. City of Virginia Beach, 256 Va. 136, 140-41, 501 S.E.2d 761, 763-64 (1998).

Shoosmith asserts that the County committed manifest error by using the income method of assessment in assessing the landfill property. Shoosmith's rationale for its position can be summarized as follows. Under Article X, § 2 of the Constitution of Virginia, real estate and tangible personal property shall be assessed and taxed at their fair market value. Intangible assets such as non-transferable use permits are not subject to assessment and taxation under this provision. Shoosmith maintains that if the use of real

response to the County's request.

6

property requires a permit which does not run with the land, any assessment of that property that is based on the permitted use is manifestly erroneous because such an assessment includes an assessment of an intangible asset the permit represents. In this case, state and local law required Shoosmith to secure permits to conduct a landfill operation on its land. Those permits did not run with the land and were not transferable. Because the method of assessment the County used factored in the income generated by a use of the land that Shoosmith enjoyed only by virtue of the non-transferable permit, the County's assessment, according to Shoosmith, included an assessment of an intangible asset and, therefore, was manifestly erroneous.

We reject Shoosmith's premise that consideration of the use of property when permits are required for that use is improper because it constitutes assessment of the permits themselves. We begin with the basic principle that real property is to be assessed at its fair market value and with the "fundamental rule that in assessing all tangible properties for tax purposes such properties should be assessed at their highest and best use." Norfolk & Western Railway Co. v. Commonwealth, 211 Va. 692, 699, 179 S.E.2d 623, 628 (1971). These rules require consideration of a property's use when assessing the property. They make no exception for uses that

7

depend on securing a permit from a governmental agency, and they do not differentiate between a use conducted pursuant to a transferable or non-transferable permit.  Our previous cases are consistent with this principle.

In Board of Supervisors of Fairfax County v. HCA Health Services of Virginia, Inc., 260 Va. 317, 535 S.E.2d 163 (2000), we considered the proper tax assessment of a hospital. The trial court first concluded that the county's assessment using the depreciated cost method was not entitled to a presumption of correctness because the county did not consider other methods of assessment.  260 Va. at 328, 535 S.E.2d at 168.  The other available assessment methods the hospital presented to the trial court included an income analysis and a comparable sales analysis.  The former was based on net revenues from the hospital's real property, consisting of revenue from inpatient services and imputed rental income to the hospital from its outpatient service area.  The latter included a number of "arms-length" sales of hospitals.  Id. at 327, 535 S.E.2d at 168.  We approved the trial court's holding that the county's assessment based on the depreciated cost method was erroneous because the county did not consider, among other things, market forces in the health care industry affecting obsolescence and depreciation, and we approved the

8

assessment made by the trial court based on health care industry market forces.  Id. at 331, 535 S.E.2d at 170.

Under Shoosmith's theory, consideration of comparable sales of other hospitals, revenue streams from the operation of the hospital, and issues related to the use of the property as a hospital such as market forces in the health care industry relating to obsolescence would have been improper because the operation of a hospital requires a non-transferable certificate of public necessity issued by the state.  Code §§ 32.1-102.3, -102.5.  In affirming the judgment of the trial court in Health Services, we implicitly rejected such a theory.

Accordingly, we hold that consideration of the use of the land in assessing fair market value, even if such use requires non-transferable government permits, is not the assessment of an intangible asset.  Therefore, the County did not commit manifest error in assessing Shoosmith's 200-acre landfill as a landfill using the income method of assessment.

Shoosmith also asserts that the County's application of the income method was flawed because proper use of that method requires determining the rental value of the land and "[o]nly the income attributable to the land – rent – should be included."  Shoosmith bases this argument on our statements in prior cases that economic rent was the measure to be used in

9

capitalizing income for fair market value determinations.  See e.g. Tysons International LP v. Board of Supervisors, 241 Va. 5, 11, 400 S.E.2d 151, 154 (1991), Board of Supervisors v. Nassif, 223 Va. 400, 404-05, 290 S.E.2d 822, 825 (1982). Again, we disagree with Shoosmith.

The cases Shoosmith cites involved properties that were subject to lease and the issue in each case was whether the economic or contract rent should be used when applying the income capitalization assessment method.  The use of economic rent is appropriate when land is under lease, but in this case, the landfill property is owner-operated and is not under lease, and there are no comparable leases of such land in evidence.

The methodology the County used in applying the income assessment was consistent with the formula the Foreman article prescribed for assessing landfills.  As that article recognizes, if the landfill is leased and the lease data is available, the assessment would include that income in the net income attributable to the real estate.  "However, such leases are almost unheard of . . . , and the only way the appraiser can estimate a net income stream attributable to the real estate is to make a careful analysis of the expenses."  This is precisely the situation here.  The property is not under lease and the County applied a 75% expense factor to account

10

for the expenses and an "unusually high" 25% discount factor. See also <u>Waste Management of Wisconsin v. Kenosha County Board of Review</u>, 516 N.W.2d 695, 704-05 (Wis. 1994).

Based on this record, we hold that the trial court did not err in concluding that Shoosmith failed to show either that the County committed manifest error in assessing the landfill property based on the income method or that the County ignored controlling evidence in determining the fair market value of the property at issue. Accordingly, we will affirm the judgment of the trial court.

<u>Affirmed.</u>

11