Present:  All the Justices

KESWICK CLUB, L.P.
                                          OPINION BY
v.  Record No. 060672        JUSTICE LAWRENCE L. KOONTZ, JR.
                                       January 12, 2007
COUNTY OF ALBEMARLE

              FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
                     James A. Luke, Judge Designate


     In this appeal, a taxpayer challenges a judgment upholding

a county's assessment of the fair market value of real estate

owned by the taxpayer for the 2003 and 2004 tax years.

Specifically, we consider whether the county failed to properly

consider the income and sales approaches to valuation before

basing its assessment solely on the cost approach.

                             BACKGROUND

     The property that is the subject of this appeal is Keswick

Club, an approximately 153-acre property in Albemarle County

("the county").  Keswick Club is a private recreational club

with facilities that include an eighteen-hole golf course, pro

shop, clubhouse with restaurant, spa, swimming pools, tennis

courts, exercise room and other amenities.  Keswick Club is

located adjacent to an upscale residential subdivision known as

Keswick Estates and a luxury hotel known as Keswick Hall.

During the relevant times, Keswick Club, L.P. ("the taxpayer")

was the record owner of the subject property.

In 2003, the county performed its biennial reassessment of real estate values for the 2003 and 2004 tax years. Subsequently, the county issued to the taxpayer a notice of reassessment stating that Keswick Club's assessed fair market value for 2003 was $12,771,500.[1] The taxpayer disputed the county's assessment of Keswick Club's fair market value and submitted an appraisal report prepared by a private appraiser. This appraisal report reflected Keswick Club's fair market value at $2.9 million utilizing the income and sales approaches to valuation, but not the cost approach.[2]

In a letter to the taxpayer dated May 15, 2003, the county disagreed with the methodology used in the private appraisal report and explained that it had chosen to use the cost approach, not the income approach or the sales approach, in valuing Keswick Club. The county stated in the letter that:

---

[1] The notice of reassessment indicated that the prior assessed value of Keswick Club was $11,318,900.

[2] The cost, income, and sales approaches are the three valuation approaches or methods most widely used to assess the fair market value of real estate. In simple terms, the cost approach values property by adding the value of land to the value of improvements, which is measured by the cost to reproduce those improvements minus depreciation. The income approach estimates the value of income-producing property by measuring the income the property is expected to generate. The sales method values property utilizing recent sale prices of comparable properties. Each of the three approaches has several commonly used names, but for simplicity and consistency, we will refer to them as the cost, income, and sales approaches.

We have reviewed the appraisal report you provided and as a result disagree with the final value estimate. In our opinion, given the status of the golf clubs located within the County, it is difficult to arrive at a fair market valuation by employing the income approach. The sales comparison approach was also not used due to the lack of available sales information within our jurisdiction. We have chosen to value area golf clubs using the cost approach.

The county's letter also noted that the other golf clubs in the county were assessed at $21,585,700, $13,281,200, and $9,159,800.[3]

The taxpayer sought review by the county Board of Equalization, which reduced Keswick Club's fair market value by $1,345,400 to account for functional obsolescence and other factors. The county subsequently made a further reduction to account for a decrease in acreage such that Keswick Club's final assessed fair market value by the county was $11,175,700.[4]

The taxpayer filed an application in the Circuit Court of Albemarle County pursuant to Code § 58.1-3984 requesting that the circuit court correct the county's 2003 and 2004 assessments. The taxpayer asserted that the county used only

---

[3] In the letter, the county notified the taxpayer that Keswick Club's assessed fair market value had been reduced by $227,900 to account for an additional depreciation allowance.

[4] The taxpayer claims that it paid its 2003 tax based on Keswick Club's assessed fair market value prior to the reduction by the Board of Equalization. The taxpayer paid its 2004 tax based on the $11,175,700 assessed fair market value after the

3

the cost approach in making its valuation and by doing so "failed to consider all factors required by law for a lawful and proper valuation of the subject property."  The taxpayer maintained that Keswick Club's actual fair market value, estimated using the "proper and preferred" methods of valuation, was $2,900,000.  The county filed a responsive pleading asserting, among other things, that its valuation method was proper and that it had used the cost approach "only after considering but properly rejecting the use of other valuation methods."

At a bench trial held in the circuit court, the parties presented evidence of Keswick Club's financial performance on the issue of whether the income approach could feasibly be applied in appraising Keswick Club.  The undisputed evidence showed that Keswick Club had operated at an uninterrupted loss for many consecutive years.  Keswick Club's general manager testified, however, that Keswick Club was projected to become profitable in future years as the result of aggressive efforts initiated by Keswick Club's new owner, Orient Express Hotels, Inc. ("Orient Express").  Orient Express had purchased Keswick Club in 2002 when the previous owner, Metropolaris, Inc.,

reduction by the Board of Equalization and the further reduction made by the county.

exercised its option under a 1999 "put and call agreement" between itself and Orient Express to sell all of Keswick Club L.P.'s stock to Orient Express for $3.7 million.[5]  Keswick Club's general manager testified that, although the "loss-making situation" had decreased since Orient Express purchased Keswick Club, the club continued to operate at a loss.

The county assessor who had assessed Keswick Club testified that, in making his appraisal, he "looked at all three approaches to value" before choosing to base his assessment solely on the cost approach.  The assessor stated that he chose to use the cost method because it rendered the "most accurate appraisal of the property" and is "appropriate when you have a special-use property" such as a golf course.

The county assessor testified that he rejected the income approach because he did not receive any income statements or other financial information pertaining to Keswick Club.  However, the assessor acknowledged that he never requested any such information.  On the issue of whether he would utilize the

_____

[5] The put and call agreement involved the transfer of shares in a subsidiary of Metropolaris, KGC Inc.  This subsidiary of Metropolaris was the sole shareholder of Keswick Club General Partner, Inc., the general partner of Keswick Club, L.P., and the majority shareholder of Keswick Club, Inc., the sole limited partner of Keswick Club, L.P.  It suffices for purposes of this appeal that the transfer of the shares in KGC, Inc. amounted to a sale of all of the beneficial ownership in Keswick Club.

income approach on a for-profit business that was losing money, the assessor stated that he would still consider such property "income producing property." He further stated that he would not use the income approach because he could not "do a proper analysis of a property with a negative income to create . . . an accurate reflection of market value."

The county assessor testified that he attempted to develop an appraisal based on the sales approach but could locate only one comparable sale inside the county. The assessor testified that "[a]fter careful examination" of that sale he chose not to use the sales approach in appraising Keswick Club. The assessor testified that he did not look outside the county for comparable sales, but gave no reason for his failure to do so. The assessor also testified that he did not consider the 2002 sale of the beneficial ownership of Keswick Club as a comparable sale because there was no record of the sale in the county real estate records and because he did not consider the sale to be an arms-length sale on the open market. The assessor's testimony indicated that he had not seen any documents related to the put and call agreement governing the sale, that he knew nothing about the terms of that agreement, and that he did not make any effort to become aware of the terms of the agreement.

6

Both parties presented expert testimony by private appraisers and presented as evidence appraisal reports prepared by those experts. The taxpayer's expert, David Sangree, testified that he utilized the income approach and the sales approach, but not the cost approach, to appraise Keswick Club. Sangree testified that he used the income approach despite the fact that Keswick Club was losing money based on his projection that, due to improved operating performance and capital improvements undertaken by the new management, Keswick Club was likely to become profitable. Sangree testified that, in applying the sales approach, he used the 2002 sale of Keswick Club as a comparable sale because "the subject sale is certainly the most important sale to consider." Sangree also used several golf courses outside Albemarle County and two out-of-state golf courses as comparable sales. Sangree estimated the fair market value of Keswick Club at $2,900,000.

The county's expert, Ivo Romanesko, testified that he did not use the income approach to appraise Keswick Club because projecting future profits would require a great deal of speculation given the club's history of losing money. Instead, Romanesko utilized the cost and sales approaches. In using the sales approach, Romanesko located comparable sales outside the county but did not search for comparable sales occurring outside

7

the State.  Romanesko did not consider the 2002 sale of Keswick Club as a comparable sale because in his opinion the situation created by the put and call agreement did not amount to an open market sale.  Romanesko's final valuations of Keswick Club using the cost and sales approaches were $12,950,000 and $12,000,000, respectively.

In its closing argument and post-trial brief, the taxpayer contended, among other things, that the county erred in basing its assessment solely on the cost approach.  The taxpayer asserted that the cost approach is less reliable for determining the fair market value of income producing property than the income and sales approaches.  Because the county only utilized the cost approach in making the assessment, without a credible basis for not considering the income or sales method, the taxpayer contended that the assessment was not entitled to the presumption of validity normally afforded to a taxing authority's assessment.  In response, the county generally contended that it considered all three valuation approaches in making its assessment and that the assessment should be upheld as not manifestly erroneous.

In a letter opinion, which subsequently was incorporated by reference into a final order, the circuit court approved the county's $11,175,700 assessment of Keswick Club.  The circuit

8

court ruled that, under Tidewater Psychiatric Institute, Inc. v. City of Virginia Beach, 256 Va. 136, 501 S.E.2d 761 (1998), a taxing authority may use the cost approach as its sole valuation method if no reliable data for the income or sales methods is available. The circuit court noted the county assessor's testimony that he considered all three valuation approaches before determining that the cost approach would be "best" for Keswick Club. The circuit court also noted that Romanesko had appraised Keswick Club's fair market value at $12,500,000. Accordingly, the circuit court concluded that the taxpayer failed to prove that the county committed manifest error in assessing Keswick Club's fair market value and approved the county's $11,175,700 assessment. This appeal followed.

## DISCUSSION

The principles that guide our review of a judgment upholding a taxing authority's assessment of the fair market value of real estate are well established. The Constitution of Virginia requires that real estate be assessed at its fair market value. Va. Const. art. X, § 2; see also Code § 58.1-3201 (requiring taxing authorities to assess real property at one-hundred percent fair market value). We have defined the fair market value of a property as its sale price when offered for sale "by one who desires, but is not obliged, to sell it, and is

bought by one who is under no necessity of having it." Tuckahoe Woman's Club v. City of Richmond, 199 Va. 734, 737, 101 S.E.2d 571, 574 (1958); see also Lake Monticello Service Co. v. Board of Supervisors, 237 Va. 434, 438, 377 S.E.2d 446, 448 (1989).

A taxpayer seeking relief from an allegedly erroneous assessment has the burden to show that the assessment exceeds fair market value. Code § 58.1-3984; see Shoosmith Bros. v. County of Chesterfield, 268 Va. 241, 245, 601 S.E.2d 641, 643 (2004); Board of Supervisors of Fairfax County v. HCA Health Services, Inc., 260 Va. 317, 329-30, 535 S.E.2d 163, 169-70 (2000); Tidewater Psychiatric Inst., 256 Va. at 140-41, 501 S.E.2d at 763. Generally, a taxing authority's assessment of a property's fair market value is presumed valid and a circuit court will reject and correct a taxing authority's assessment only if the taxpayer demonstrates that the taxing authority committed manifest error or disregarded controlling evidence in making the assessment. See Shoosmith Bros., 268 Va. at 245, 601 S.E.2d at 643; HCA Health Servs., 260 Va. at 329-30, 535 S.E.2d at 169-70; Tidewater Psychiatric Inst., 256 Va. at 140-41, 501 S.E.2d at 763.

In determining the fair market value of real estate, taxing authorities commonly use one or more of three valuation approaches: the cost approach, income approach, and sales

10

approach.  Each of these approaches utilizes different characteristics of a property to estimate fair market value, and each analyzes different elements of the property which would likely affect the price a potential buyer would be willing to pay for the property on the open market.  Ideally, an appraisal should, if possible, derive its final determination of a property's value using all three approaches in order to maximize the likelihood that the valuation accurately reflects the property's fair market value.  See Arlington County Board v. Ginsberg, 228 Va. 633, 641, 325 S.E.2d 348, 353 (1985)(stating that "[e]verything which affects market value must be considered"); see also Lake Monticello Serv. Co., 237 Va. at 439, 377 S.E.2d at 449 (fair market value "focuses on those elements which influence a buyer and a seller in arriving at a sale price").

However, with respect to any given property, a taxing authority may determine that the use of one or more of these approaches is not feasible.  In cases where a taxing authority bases an assessment of fair market value solely on one approach in determining the fair market value of property, the resulting assessment is entitled to the presumption of validity so long as the taxing authority "consider[s] and properly reject[s]" the other valuation methods.  HCA Health Services, 260 Va. at 330-

11

31, 535 S.E.2d at 170; Tidewater Psychiatric Inst., 256 Va. 140-41, 501 S.E.2d at 763. In applying the "considers and properly rejects" standard to a taxing authority's decision to apply a single approach, we have refused to afford a presumption of validity to an assessment when the taxing authority failed to make an "effort to acquire the data necessary to perform appraisals" based on the other approaches. HCA Health Services, 260 Va. at 330, 535 S.E.2d at 170.

Since the taxpayer challenges the assessment in this case based on the county's choice of the cost approach as the sole method used to make the assessment, we must determine whether the evidence in this case reflects that the county considered and properly rejected the income and sales approaches before relying solely on the cost approach. In doing so, we reiterate that "courts must be hesitant, within reasonable bounds, to set aside the judgment of assessors; otherwise, the courts will become boards of assessment thereby arrogating to themselves the function of the duly constituted tax authorities." City of Richmond v. Gordon, 224 Va. 103, 110, 294 S.E.2d 846, 850 (1982) (internal quotation marks omitted).

The assessment of real estate, especially with regard to unique properties such as golf courses, is a process upon which even experts can disagree, as reflected by the disparity between

12

the approaches used and the results reached by the county assessor and the experts in this case. Accordingly, in determining whether the county considered and properly rejected the income and sales approaches in this case, we do not review the ultimate conclusions of the professional appraisers regarding the utility or non-utility of applying a certain approach to valuing Keswick Club's fair market value over an alternate approach.

We begin our review of the evidence with the county's May 15, 2003 letter to the taxpayer. In that letter, the county, in explaining its method for valuing Keswick Club, stated that "[w]e have chosen to value area golf clubs using the cost approach." The county further stated that due to the "status of golf clubs in the county" it would be difficult to determine fair market value using the income approach and that the sales approach was not used in valuing Keswick Club due to the lack of comparable sales in the county. The county's statement that it had chosen to value all area golf clubs using solely the cost approach evidences a categorical determination by the county that golf courses as a class of property would not be appraised using the income and sales methods. Such a determination disregards the fact that golf courses, like other properties, are constantly vulnerable to changing market forces that may

13

affect fair market value and each is a unique property. For the county to apply the cost approach in an arbitrary, categorical fashion to all golf courses invokes a serious risk that information relevant to the determination of fair market value will not be considered.[6]

The evidence adduced at trial further suggests that the county applied the cost approach to Keswick Club in an automatic fashion without sufficiently attempting to gather the data necessary to utilize the income approach or sales approach. Regarding the income approach, the county assessor's testimony indicates that he rejected the income method because he was not provided income statements or other financial information concerning Keswick Club. However, the assessor acknowledged in his testimony that neither he nor any other county official ever requested Keswick Club's income statements or financial information, even though the county was entitled to request this

---

[6] The county indicated at trial that its reference to the "status of golf clubs in the county" in the May 15, 2003 letter reflected its belief that, while golf courses in the county operated to generate income, no club was operating to maximize income, and that the income approach would thus not accurately reflect fair market value. However, even if the county's golf courses do not operate in a fashion so as to maximize profit, such a fact would not be a reason to reject the income approach outright but, rather, would be a factor to consider in determining what weight the income approach would have in the ultimate assessment of the property's value with respect to each golf course.

14

information under Code § 58.1-3294.[7]  The fact that the county did not attempt to obtain the financial information that would be crucial to a determination whether the income approach would be feasible or appropriate, despite being statutorily empowered to do so, further indicates that the county arbitrarily determined to use the cost method in appraising Keswick Club without properly considering the feasibility of using the income approach.

Regarding its consideration of the sales approach, the county stated that it considered that approach but rejected it due to the paucity of comparable sales within the county and its decision not to look for comparable sales outside the jurisdiction.  The county also chose not to consider the 2002 sale of Keswick Club, which the county concluded was not an arms-length transaction.  In reviewing whether the county considered and properly rejected the sales approach, the evidence shows that the county considered only one sale within the jurisdiction.  The evidence in the record is insufficient for us to decide that the county's decision not to look for comparable sales outside of the jurisdiction was error.

_____

[7] Code § 58.1-3294 provides, in relevant part, that "[a]ny duly authorized real estate assessor . . . may require that the owners of income-producing real estate . . . furnish . . .

15

However, the evidence supports the conclusion that the county's refusal to sufficiently investigate, or investigate at all, the terms and circumstances of the 2002 sale of Keswick Club amounts to a failure by the county to consider and properly reject the sales approach.

It is well settled that a recent sale of the subject property, while not conclusive in determining fair market value, is entitled to "substantial weight." Arlington County Board, 228 Va. at 640, 325 S.E.2d at 352; Board of Supervisors v. Donatelli & Klein, Inc., 228 Va. 620, 628, 325 S.E.2d 342, 345 (1985); American Viscose Corp. v. City of Roanoke, 205 Va. 192, 196, 135 S.E.2d 795, 798 (1964). As the county correctly contends, a taxing authority may choose not to consider a sale of the subject property that is not an arms-length transaction made on the open market. See Tidewater Psychiatric Inst., 256 Va. at 140-41, 501 S.E.2d at 763 (recent sale of subject property rejected by taxing authority where sale price was well below the recent sale price of comparable properties). Nevertheless, given the strong evidence of fair market value that a recent sale of the subject property can provide, a taxing authority should carefully scrutinize the factual circumstances

---

statements of the income and expenses attributable over a specified period of time to each such parcel of real estate."

of such a sale before determining that it does not meet the criteria for an arms-length transaction.

In this case, the county stated that it did not consider the 2002 sale of Keswick Club to be a comparable sale because the sale took place under a put and call agreement negotiated three years prior to the sale. However, the county assessor acknowledged at trial that he knew "nothing" about the terms of this agreement or the circumstances pertaining to it. Furthermore, the evidence does not reflect that the county made any attempt to acquire information relevant to this agreement that would have informed its conclusion that the sale was not an arms-length transaction. The fact that the sale was of the beneficial interest of an entity owning Keswick Club, as opposed to the outright sale of the real estate, is not a sufficient reason, in and of itself, to fail to investigate the terms of that sale. In light of the principle that a recent sale of a subject property is to be afforded substantial weight in assessing that property's fair market value, the county's failure even to attempt to familiarize itself with the terms of the put and call agreement leads to the conclusion that the county did not "consider and properly reject" the sales approach.

17

For these reasons, we are of opinion that the county's categorical application of the cost approach to the valuation of all golf courses resulted in a failure by the county to consider and properly reject the income and sales approaches before solely utilizing the cost approach in assessing the fair market value of Keswick Club. Here, the county did not attempt to obtain the data necessary to perform appraisals based on the income and sales approaches. An assessment based on a single approach to the determination of market value, where the taxing authority failed to consider and properly reject the other approaches, is not entitled to a presumption of validity. HCA Health Servs., 260 Va. at 329-30, 535 S.E.2d at 169-70. Therefore, the taxpayer was required only to show that the county's assessment was erroneous, not that the county committed manifest error or disregarded controlling evidence in making its assessment. Id. at 330, 535 S.E.2d at 170.

CONCLUSION

The circuit court's letter opinion reflects that the court reviewed the county's 2003 and 2004 assessments of Keswick Club under the standard of review applicable when the assessments are entitled to a presumption of validity, requiring the taxpayer to prove that the county committed manifest error or disregarded controlling evidence. However, since the assessments were not

18

entitled to a presumption of validity, the proper standard of review was the less stringent standard, requiring the taxpayer only to prove that the county's assessments were erroneous.  The circuit court erred in reviewing the taxpayer's application to correct the county's assessments of Keswick Club under the wrong standard of review.  Accordingly, we will reverse the judgment of the circuit court and remand this case so that the circuit court can apply the proper and less stringent standard of review applicable under the facts of this particular case.

Reversed and remanded.