Present:  All the Justices

TIDEWATER PSYCHIATRIC INSTITUTE, INC.

                                        OPINION BY
v.  Record No. 971635          JUSTICE LAWRENCE L. KOONTZ, JR.
                                        June 5, 1998
CITY OF VIRGINIA BEACH

        FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                 Morris B. Gutterman, Judge Designate

    This is a taxpayer's appeal from a judgment upholding

assessments of a private psychiatric hospital facility for the

tax years 1990 through 1995.[1]

                            BACKGROUND

    Tidewater Psychiatric Institute, Inc. (Tidewater) filed an

application and subsequent amended application for relief to

correct alleged erroneous assessments for the tax years 1990

through 1995 of two parcels in the City of Virginia Beach (the

City) that Tidewater owned or leased,[2] asserting that these

assessments "were arbitrary, inequitable and excessive."

---

[1]The tax year for real property in the City of Virginia
Beach is based upon assessments made during the first six months
of one year with taxes levied on those assessments for the
period of July 1 of that year to June 30 of the following year.
For purposes of clarity, we will refer to tax years within this
opinion by their "year-ending" date.  Thus, an assessment made
in 1989 for taxes levied between July 1, 1989 and June 30, 1990
would be the assessment for the 1990 tax year.

[2]The evidence was at times in conflict with the allegation
in Tidewater's pleadings that Tidewater owned one parcel and
leased the other at all times relevant to the assessments being
challenged.  It appears that the confusion over the ownership of
the property stems in part from the fact that Tidewater
continued to operate the hospital located on the property, while

In the course of pretrial discovery, Tidewater filed supplemental interrogatories requesting that the City identify its expert witnesses. The City identified Bradley R. Sanford, a commercial real estate appraiser, as its only expert witness. During the pretrial conference, the City indicated that it also intended to call Jerald D. Banagan, the City Assessor, as an expert witness. Tidewater subsequently filed a motion in limine to prohibit Banagan from offering expert testimony, asserting that the City had failed to name him as an expert in its response to interrogatories. The trial court overruled the motion, but offered Tidewater a continuance so that it might redepose Banagan. Tidewater declined the offer of a continuance and later conceded that it "claim[ed] no surprise" as a result of Banagan's testimony.

At trial, the evidence showed that the disputed assessments related to two contiguous parcels comprising a hospital facility and gymnasium (the property). The hospital facility is located on a parcel of approximately four acres and consists of a two-story, wood and steel frame, aluminum-sided main building and an attached two-story, steel frame, masonry and concrete addition. Together, the main building and addition have 61 patient beds as

the property changed hands among various corporate entities. However, the parties do not dispute that Tidewater was responsible for and actually paid the taxes levied on the assessments it challenges in this case.

2

well as support facilities.  The gymnasium, which is also a two-story, steel frame, masonry and concrete structure, is situated to the rear of the main building on a three-acre parcel.

For the 1990 tax year, the combined assessment of the two parcels by the City valued the property at $3,960,424.  For the 1991 tax year the combined assessment was $4,171,907; for 1992, $4,324,367; for 1993 and 1994, $4,804,034; and for 1995, $4,789,876.

Tidewater presented evidence from Tappe Squires, a vice-president of Tidewater's parent company.  Squires testified that the property had originally been acquired in 1982 as part of a corporate takeover of a network of thirty similar facilities at an aggregate price of $102,000,000.  Tidewater's parent company subsequently sold the property in 1994 to another hospital network for a total sales price of $872,000.  The gymnasium was subsequently sold the following year for $68,000.

Tidewater also presented evidence from Carol Reynolds, a commercial real estate appraiser.  Reynolds presented the evaluation of the property she prepared for Tidewater.  In that evaluation, Reynolds appraised the property's fair market value at $2,800,000 on January 1 for the years from 1991 to 1994.  Comparing Reynolds' appraisal to the City's assessment in tax years 1991 to 1995, Tidewater alleged over-assessments of

between approximately $1,300,000 and $2,000,000 for those years. Based upon these calculations, Tidewater asserted that it had overpaid $98,148.21 in real estate taxes over that period.

Reynolds testified that she used three approaches in determining the fair market value of the property: a cost method, an income method, and a comparable sales method. She further testified that of these three methods, the cost method, which establishes the value of a building based upon its reproduction cost less its depreciation, was the least reliable due to the subjective nature of depreciation, especially for older facilities such as Tidewater's property.

Tidewater then called Banagan, the City Assessor, as an adverse witness. Banagan testified that in assessing the property, the City used only the depreciated reproduction cost method to evaluate the property because it had determined that no reliable comparable sales or income data were available upon which to base the assessments. Banagan further testified that his office used a set of standard published indices and the "calculator method" described in the guidelines to the indices to obtain the depreciated reproduction cost of the property, and that this was "the method we used on all our properties that we do a cost approach on."

Banagan further testified that during the period in question the City had utilized two different building class

4

schedules from the indices to determine the depreciated value of the buildings on the property. Banagan explained that the buildings were of "Class A" construction quality because they were primarily steel frame, masonry and concrete structures, but that guidelines to the indices directed that low-rise "Class A" structures, such as Tidewater's property, be treated as "Class C" structures.

Initially, the City interpreted the guidelines as requiring the use "Class C" cost, but still permitting "Class A" depreciation because the property "is a steel frame building. . . . It will stand longer." In 1994, the City altered its policy and began using both "Class C" cost and depreciation schedules for such properties. Banagan described the change in policy as "a philosophical change. That doesn't mean one way is more correct than the other. . . . It is a rather insignificant, minor, technical, change."

The City called Sanford as an expert witness. Sanford testified that he had been retained by the City to perform a "desk top" or technical review of Reynolds' evaluation of the property. Sanford "found that the appraisal report lacked depth of data . . . and that resulted in a lack of in-depth analysis such that [Sanford] could [not] agree with [Reynolds'] value conclusion."

The City then recalled Banagan as its own witness and sought to have him qualified as an expert appraiser. Tidewater challenged his qualifications as an appraiser of psychiatric hospitals. The trial court qualified Banagan as an expert appraiser, responding to Tidewater's objection by stating that Banagan's level of familiarity with the specific type of property was a matter of the weight to be given his testimony.

Banagan reiterated his prior testimony that the City used the depreciated reproduction cost method of valuing the property because no reliable data for the income or comparable sales methods were available to evaluate the property. Banagan further testified that the City did not believe that the 1994 and 1995 sales were arm's-length transactions, since the value assigned to the property in these transactions was well below the value of other commercially zoned property in the City as established by comparable sales.

After receiving trial memoranda from the parties and reviewing the record and evidence, the trial court entered an order dated May 5, 1997, denying the amended application on the ground that Tidewater had "failed to establish either manifest error or total disregard of controlling evidence by the City's Real Estate Assessor." We awarded Tidewater this appeal.

6

Real estate is to be assessed at its fair market value. Va. Const. art. X, § 2. However, assessments by taxing authorities are afforded a presumption of correctness, and the burden is on the taxpayer to rebut that presumption. Board of Supervisors of Fairfax County v. Telecommunications Industries, 246 Va. 472, 475, 436 S.E.2d 442, 444 (1993). To do so, the taxpayer must show by a clear preponderance of the evidence that his property is assessed at more than fair market value. Code § 58.1-3984; see also City of Richmond v. Gordon, 224 Va. 103, 110, 294 S.E.2d 846, 850 (1982); Skyline Swannanoa, Inc. v. Nelson County, 186 Va. 878, 886, 44 S.E.2d 437, 441 (1947). Thus, the dispositive issue of this appeal is whether the trial court correctly determined that Tidewater failed to rebut that presumption by "a showing of manifest error or total disregard of controlling evidence" in the City's method of determining the fair market value of the property.[3] Telecommunications Industries, 246 Va. at 475, 436 S.E.2d at 444.

---

[3]Tidewater also assigns error to the trial court's permitting Banagan to testify as an expert witness on the ground that he had not been properly identified as such during discovery. By declining the trial court's offer of a continuance and conceding that it suffered no prejudice because of surprise, Tidewater waived this objection, and we will not consider this issue on appeal.

Tidewater's evidence of the fair market value of the property was limited to an expert's appraisal for four of the six tax years in question. Tidewater devoted much of its case to presenting its theory that the City erred in using depreciated reproduction cost, rather than sales or income methods, to determine fair market value in its assessment of the property. The City presented evidence that challenged the validity of the data used in Tidewater's appraisal and provided justification for its having rejected the alternative methods of assessing the property relied on by Tidewater's expert. The City further presented evidence that it used a recognized method of determining fair market value through standard indices for determining reproduction cost and depreciation. In these respects, the issue was presented to the trial court as a "battle of experts," and we will defer to the judgment of weight and credibility given to the testimony of the experts by the trial court. Norfolk and Western Railway Company v. Commonwealth, 211 Va. 692, 700, 179 S.E.2d 623, 629 (1971).

Tidewater contends, however, that its evidence nonetheless established that the City's method of assessing the property was improper in that the City relied solely on the depreciated reproduction cost method in determining the value of Tidewater's property. In support of this contention, Tidewater cites Tuckahoe Woman's Club v. City of Richmond for the proposition

8

that "[d]epreciated reproduction cost may be an element for consideration in ascertaining fair market value, but it cannot of itself be the standard for assessment." 199 Va. 734, 740, 101 S.E.2d 571, 575 (1958). This language is being taken out of context, and, thus, Tidewater's reliance on it is misplaced.

In Tuckahoe, the evidence showed that the depreciated reproduction cost of the land and improvements was $105,000. Id. at 737, 101 S.E.2d at 573. However, the evidence further showed that market conditions were such that the property "would not bring more than $75,000 to $85,000" if offered for sale on the open market. Id. at 739, 101 S.E.2d at 575. The City conceded that the sales method produced an accurate assessment and that the depreciated reproduction cost "produced an amount in excess of what the property could be sold for." Id. at 740, 101 S.E.2d at 575. Therefore, we held that the City's resort to this method of determining fair market value in disregard of the undisputed evidence of the actual sales value of the property constituted manifest error. However, our decision in Tuckahoe is not applicable on the facts here.

We have subsequently applied the holding in Tuckahoe in other cases and have explained that the use of depreciated reproduction cost as the sole basis for determining fair market value is erroneous only where the taxing authority fails to consider other factors that plainly show such a method "would

patently lead to unfair and improper results." <u>First and Merchants National Bank of Richmond v. County of Amherst</u>, 204 Va. 584, 588, 132 S.E.2d 721, 724 (1963).  Thus, where a taxing authority considers and properly rejects other methods of calculating the value of property, an assessment based on depreciated reproduction cost is entitled to a presumption of validity where that method is the only one remaining.  <u>Norfolk and Western</u>, 211 Va. at 700-01, 179 S.E.2d at 629.

The record establishes that the City considered other methods for determining fair market value, but that it lacked reliable data to arrive at an accurate value for the property under an income method.  The record further shows that the City considered using a comparable sales method of assessment, but determined that the 1994 and 1995 sales were clearly not fair market prices in light of the prevailing market.  Thus, as in <u>Norfolk and Western</u>, depreciated reproduction cost was the only reliable method available to the taxing authority, and the value arrived at under that method is entitled to a presumption of correctness.  <u>Id.</u>  Accordingly, we hold that Tidewater failed to meet its burden of showing that the City's choice of depreciated reproduction cost as the method for valuing this particular property was manifest error or in disregard of controlling evidence.

10

Tidewater nonetheless contends that even if the City's use of the depreciated reproduction cost method was appropriate, it improperly applied that method in those years in which it based the property's reproduction cost on the "Class C" schedule, but used the "Class A" schedule to calculate the percentage of depreciation. We disagree.

Tidewater failed to present any evidence rebutting Banagan's testimony that neither interpretation of the guidelines was "more correct than the other." The evidence at best established that the City simply altered its interpretation of the guidelines accompanying the indices it used to determine the value of properties under the depreciated reproduction cost method, and not that its prior method was manifestly erroneous or that it applied that method arbitrarily to Tidewater's property while treating similar properties differently.

For these reasons, we will affirm the judgment of the trial court.[4]

Affirmed.

---

[4]We also accepted an assignment of cross-error raised by the City. Our resolution of the principal issue of the appeal in the City's favor renders that cross-error moot.