# CIRCUIT COURT OF THE CITY OF NORFOLK

IPROC Norfolk, L.L.C.

v.

City of Norfolk

April 24, 2013

Case Nos. (Civil) CL11-5571 and CL11-7907

BY JUDGE CHARLES E. POSTON

This matter is before the Court following the conclusion of a trial and the submission of post-trial briefs by counsel. For the following reasons, the Court will grant judgment to the Defendant and dismiss the complaint.

## Background

IPROC Norfolk, L.L.C., filed its complaint seeking to correct the real estate tax assessments for the Norfolk Waterside Marriott Hotel ("Hotel") and Convention Center complex ("Convention Center") for the 2009, 2010, and 2011 tax years. The Hotel was owned in fee simple by IPROC during the challenged tax years. The Convention Center, which IPROC occupied, is subject to a long term ground lease from the City of Norfolk ("City"). For the 2009 tax year, the City assessed the Hotel at $47,759,700 and the Convention Center at $5,040,900, in 2010, the City assessed the Hotel at $51,541,800 and the Convention Center at $5,040,900, and, in 2011, the City assessed the Hotel at $46,195,400 and the Convention Center at $5,040,900. IPROC argues that, for the 2009 tax year, the City over assessed the Hotel by $16,928,700 and the Convention Center by $471,900. IPROC further argues that, for the 2010 tax year, the City over assessed the Hotel by $25,413,800 and the Convention Center by $1,168,900. Finally, IPROC argues that, for the 2011 tax year, the City over assessed the Hotel by

$16,410,400 and the Convention Center by $625,900. IPROC's contends that the City grossly overvalued the fair market value of both parcels during these three tax years, and, therefore, IPROC petitions the Court to reduce the tax assessments for both properties.

Beginning in late 2007, as the United States economy began to falter, consumer spending on hotels and similar services began to decline, causing noticeable drops in hotel occupancy rates and revenue streams. The Hotel and Convention Center were not immune from this trend and experienced reductions in both room revenue and food and beverage sales until 2010. IPROC argues that the City failed to consider the impact of the economic downturn on the Norfolk hospitality industry when it prepared its assessment of the Hotel and Convention Center. According to IPROC, these failures led to the calculation of inflated fair market values for both parcels. IPROC also argues that the City refused to consider the Hotel's mandatory reserves for replacement when it made the assessment. Finally, IPROC alleges that the Hotel and Convention Center were not assessed in a uniform manner with similarly zoned properties throughout the City.

IPROC further asserts that the City used dated financial data from two years prior to each respective tax year in question. For example, data from 2007 was used to determine the 2009 assessment. IPROC also urges that the value the City affixed to the attached Convention Center is arbitrary and, in fact, amounts to double taxation. Finally, IPROC argues that a lack of uniformity exists across similar classes of full service hotels, causing the Hotel to be taxed at a much higher rate than the other hotels in its class. IPROC, relying on the testimony of its expert witness, argues that the City's failure to consider these factors in its assessment resulted in a significantly inflated fair market value.

Appraisers typically rely on three methods of assessment to determine the fair market value of a property: the cost approach, the sales approach, and the income approach. IPROC and the City, after considering both the cost and sales approach, agree that the income based approach is the most appropriate method for determining the fair market value of the property. The income based approach utilizes a basic income capitalization valuation of the subject property that is derived through an examination of a myriad of economic factors. Though there is no disagreement between the parties that the income approach is the appropriate method for determining the fair market value of the Hotel, the parties disagree about what factors should be considered in arriving at an appropriate fair market value.

The City contends that IPROC's methodology is flawed because it relies on calculations based upon uncertain and speculative future expenses. The City also contends that the capitalization rate utilized by IPROC's expert to calculate fair market value is significantly higher than that used by the City's appraiser and includes factors the City deems to be superfluous. The City contends that the 5% replacement for reserve utilized by IPROC and

mandated by the Hotel franchise agreement with Marriott should not be considered when determining the fair market value of the property and that its inclusion by IPROC's expert led to the derivation of a much lower fair market value.

*Discussion*

A. *Standard of Review*

A taxpayer seeking relief from an allegedly erroneous assessment must prove that the assessment exceeded the fair market value. *Keswick Club, L.P. v. County of Albemarle*, 273 Va. 128, 136, 639 S.E.2d 243, 247 (2007). Virginia Code § 58.1-3984 provides that a taxpayer must show by a preponderance of the evidence that the property has been assessed at more than its fair market value, that the assessment was not uniform in its application, or that the assessment was made in some otherwise invalid or illegal manner. A clear presumption favors the validity of the assessment, and that presumption can only be rebutted by a clear showing of manifest error or total disregard of controlling evidence. *Board of Supervisors of Fairfax County v. Telecommunications Indus., Inc.*, 246 Va. 472, 476, 436 S.E.2d 442, 444 (1993); *City of Richmond v. Gordon*, 224 Va. 103, 110, 294 S.E.2d 846, 850 (1982).

Courts should be reluctant, within reasonable bounds, to change an assessor's judgments because courts are not duly constituted tax authorities. *Telecommunications Indus., Inc.*, 246 Va. at 476, 436 S.E.2d at 444; *Board of Supervisors v. Leasco Realty, Inc.*, 221 Va. 158, 165, 267 S.E.2d 608, 612 (1980). Nevertheless, if the trial court finds a manifest error in the assessment, it may properly find the presumption rebutted and fix the fair market value of the property in accordance with the evidence. Va. Code § 58.1-3987.

Adjudication of a taxpayer's complaint for a correction of erroneous tax assessments is governed by clearly established principals of law. The Constitution of Virginia provides that "[a]ll assessments of real estate and tangible personal property shall be assessed at their fair market value." Va. Const., art. X, § 2. The Courts have routinely defined fair market value as the "sale price when offered for sale by one who desires, but is not obliged, to sell it, and is bought by one who is under no necessity of having it." *TB Venture, L.L.C. v. Arlington County*, 280 Va. 558, 564, 701 S.E.2d 791 794 (2010) (internal citations omitted); *Army-Navy Country Club v. City of Fairfax*, 2012 Va. Cir. LEXIS 21, at *3 (Fairfax County 2012) Additionally, in determining fair market value, "all the capabilities of the property and all the uses to which it may be applied or for which it is adapted are to be considered." *Tuckahoe Woman's Club v. City of Richmond*, 199 Va. 734,

738, 101 S.E.2d 571, 574 (1958). Finally, fair market value is not to be based on the land's "prospective, speculative, or possible value, based on future expenditures and improvements." *Fruit Growers Express Co. v. City of Alexandria*, 216 Va. 602, 609, 221 S.E.2d 157, 162 (1976).

The Virginia Supreme Court has held that, for a taxpayer to overcome the statutory presumption in favor of the assessment, the taxpayer must show that the property was assessed at more than its fair market value. *West Creek Assoc., L.L.C. v. County of Goochland*, 276 Va. 393, 665 S.E.2d 834 (2008). In order to prove that the property was over assessed, then, IPROC must first establish the property's fair market value.

## B. *Establishment of Fair Market Value*

To prove that the property was over assessed, IPROC must first establish the fair market value. According to IPROC, the City grossly overvalued the fair market value of the Hotel by relying on two year old income and expense data that did not reflect the parcel's true fair market value. Further, IPROC argues that the City failed to adjust its assessment during a period of economic decline, which it argues, the City was authorized to do by Virginia Code § 58.1-3981.

Ms. Anne Lloyd-Jones, IPROC's valuation expert, is the managing director of Hotel Appraisals, L.L.C., an appraisal firm that specializes in appraisal work in the hospitality industry, and she possesses impressive qualifications in her field. Lloyd-Jones testified that a buyer would not look to data that was two years old to determine a property fair market value. Instead, Lloyd-Jones claimed that a potential buyer would look to factors such as the current state of the economy, how much money the buyer could earn from the investment, and the overall outlook for the property as of that time.

In contested assessment cases, the Virginia Supreme Court has found that "valuation based upon an estimate of the potential income which might be realized from utilization by the owner of the property in a manner of which it is capable (but of which he has not yet availed himself) has generally been rejected on the ground that such income is too uncertain and conjectural to be acceptable." *Fruit Growers Express Co.*, 216 Va. at 607, 221 S.E.2d at 161. Although *Fruit Growers Express* itself did not deal with a hotel property, the intent of the Court seems clear: an assessment of real property, be it undeveloped land or an income producing property, should be based on concrete figures, not speculative predictions of what the property may or may not produce in a coming year. By basing its assessment on the earnings of the property over the past two years, the City developed a fair market value for the property based upon concrete data calculated by the Hotel itself over the past two years. There is no guesswork as to what the Hotel may or may not earn; thus, the speculation about which the Court warned is removed from the equation.

Lloyd-Jones may be correct that a potential buyer would examine factors such as the property's potential for future earnings, when considering whether to purchase a particular property. However, such an approach is not mandated by Virginia law and is impractical, if not impossible, for a taxing authority to employ. Va. Code § 58.1-3250 dictates that a city shall reassess real estate every two years and, if a city chooses, it may assess real estate on an annual basis. In fact, the Virginia Code makes it clear that if smaller cities with a population of 30,000 or less so choose, they may perform their assessments at four year intervals. Va. Code § 58.1-3250. The City is not tasked with determining how well this property will do in the future for business purposes; it is tasked instead with calculating a firm present fair market value for the parcel.

According to the language of the statute, a city in Virginia with over 30,000 residents may undertake the assessment of real estate as its council sees fit as long as it is within the two year window prescribed by the General Assembly; in the case of Norfolk, the City has elected to perform annual assessments. Norfolk City Charter § 88(a). This range of permitted assessment intervals, some as long as five years, demonstrates that the General Assembly understands that the assessed fair market value used for a given tax year by a locality may not be reflective of every existing present and future market condition.

The City's use of clearly established financial data as well as its decision to reassess real estate annually allows the assessor to establish an accurate fair market value for the subject property. While IPROC presented expert appraisers to challenge the City's assessment, "the value of property is a matter of opinion and there must necessarily be left a wide room for the exercise of opinion, otherwise courts will be converted into assessing boards." *City of Norfolk v. Snyder*, 161 Va. 288, 292, 170 S.E. 721, 723 (1933).

Assessments, by their very nature are speculative. The appraiser is tasked with estimating the value of specific parcels of real estate by weighing a series of financial indicators. Additionally, individual appraisers may give more credence or weight to specific financial indicators that will significantly influence their valuation. This complex and sometimes conflicting methodology is clearly on display in the action at bar. Three highly respected valuation experts testified to the value of the Hotel and Convention Center parcels, and all three arrived at different fair market values for the parcels. None of the experts in this case appear to have made mistakes in their appraisals or calculations; they simply utilized different formulas and emphasized particular factors more than others. Absent clear error, more than a difference in expert opinions or formulas is required to overcome the presumption of correctness that clothes the taxing authority's assessment.

Instances of sufficient error to overcome the presumption in favor of the assessment are not widespread, but examples exist in Virginia and are worth noting. In *Army-Navy Country Club v. City of Fairfax*, the court rejected the assessor's use of a disfavored development appraisal technique which had been previously criticized by the Virginia Supreme Court. 2012 Va. Cir. LEXIS 21, at *19-20 (Fairfax County 2012). The court found that the assessor's reliance on such a technique led the city to arrive at a much higher fair market value than the property was actually worth. *Id.*

Another Court, when viewing nine separate deficiencies with the appraiser's methodology and assessment as a whole, reduced the erroneous assessment. *WXIII/Oxford-DTC Real Estate, L.L.C. v. Loudoun County Bd. of Supervisors*, 64 Va. Cir. 317, 329 (Loudoun County 2004). The assessor in *Oxford-DTC* lacked sufficient knowledge about the property type being assessed, utilized an inappropriate sales assessment method, and calculated the value of the property using thirty-three more rooms than the property actually operated. *Id.*

None of these deficiencies exist in the present case. In contrast, the City used concrete financial data from the previous two years and employed an accepted methodology to arrive at a fair market value for the Hotel and Convention Center. Both sides agree that the income approach is the best methodology to use when assessing the Hotel, and IPROC has failed to offer any evidence of substantial error in the assessments themselves. Absent something more than a disagreement between expert appraisers, none of these factors amounts to sufficient evidence to overcome the presumption in favor of the assessment. Consequently, the Court finds that the City did not err when it calculated the fair market value of the Hotel and Convention Center properties for the tax years at issue.

## C. *Reserve for Replacement*

IPROC argues that the City's failure to include a reserve for replacement in its overall valuation of the Hotel made it impossible for a true fair market value to be obtained. A reserve for replacement is a portion of gross revenues that a hotel is required by its franchise agreement to set aside for ongoing renovations and improvements. These funds are used to replace worn out furnishings so that the hotel can maintain a level of quality that a consumer expects from a property bearing the franchisor's name. Though a building may stand for well over fifty years, it seems unlikely that anyone, especially a hotel, would keep the same furniture and carpet over a similar length of time.

The commercial project supervisor in the City assessor's office, Ms. Elizabeth Hancock, acknowledged that the practice of including a replacement reserve is customary under International Association of Assessing Officers (IAAO) guidelines but made it clear that a reserve for replacement was not considered when assessing *any* hotel or motel

property in Norfolk; instead these reserve for replacement accounts were treated as escrow accounts because including the reserve for replacement in the City's calculations would produce a lack of uniformity. The Court finds this rationale to be persuasive, and, in fact, the testimony of IPROC's own expert seems to confirm the idea that the inclusion of the replacement reserve would lead to a lack of uniformity. In her testimony, Lloyd-Jones testified that typical reductions for reserves can vary from between two and five percent. She also testified that hotels in some cases are not required to spend all of the money set aside in the reserve account and that this account can accumulate significant balances over a period of years.

The Supreme Court of Virginia has concluded that, "[w]hen it is impossible to achieve both fair market value and uniformity, the preferred standard is uniformity." *Telecommunications Indus. Inc.*, 246 Va. at 477, 436 S.E.2d at 445; *Leasco Realty*, 221 Va. at 166, 267 S.E.2d at 613. Since Hancock testified that most of the hotel properties that the City assesses do not report a reserve in their statements, deducting up to five percent for one hotel which does report and zero percent for another would lead to a gross lack of uniformity in the final assessments. If the City began considering reserves in its assessments, hotel properties in Norfolk could deduct up to five percent for their reserve accounts as a vehicle to lower their tax assessments. Because of the absence of a standard percentage to be deducted for the reserve, the failure of some hotels to spend the reserve funds, and the potential for misuse of such an account, the Court cannot conclude that the City's failure to consider replacement reserve was error.

IPROC argues that, by failing to take into consideration the reserve for replacement, the City is precluding the Hotel from adjusting its fair market value when upkeep is necessary. This does not appear to be the case. Hancock testified that, when a hotel has a necessary repair that improves the useful life of the property as a whole, such as the addition of a new roof, these types of expenses are amortized by the assessor. Improvements to items such as furnishings and carpet, however, are not treated the same way. Instead of being deducted like repairs and maintenance, these expenses are capitalized.

IPROC argues that the City assessor should comply with the guidelines established by IAAO. The City assessor is a member of the IAAO, and the guidelines do in fact demonstrate that it is customary for an assessor to consider a reserve for replacement when performing an assessment, even if the owner itself does not account for one. IPROC argues that, because the City does not calculate a reserve into its assessments, it is in fact violating the IAAO guidelines. These regulations, however, are simply guidelines to assist an assessor as she evaluates a property; the assessor is not bound to follow every recommended guideline. The assessor is, instead, regulated by the Virginia Constitution, the Code of Virginia, and the Norfolk City Charter. Nothing in these sources of law mandate that the city assessor must

include a reserve in her assessment; instead, they defer in large measure to the assessor and her judgment to assure that fair market value and uniformity are maintained.

The same argument regarding a failure to follow standard assessing practices is offered by IPROC with regard to the City's use of the judicial exception in the language of Uniform Standards of Professional Appraisal Practice ("USPAP"). The USPAP jurisdiction exception, found in section 6, states that, "[i]f any part of USPAP is contrary to law or public policy of any jurisdiction, only that part shall be void and of no force or effect in that jurisdiction." USPAP Jurisdictional Exception 6. As already discussed, in Virginia, uniformity of assessments should control when assessing hotels of a similar class. When one considers the testimony of both IPROC's expert and the City's appraiser, one must conclude that considering the reserve in the assessment would lead to a lack of uniformity that is unacceptable under Virginia law. It is thus within the discretion of the City's appraiser to invoke the jurisdictional exception to preserve the local rules and, as a result, IPROC is incorrect in claiming that the City's invocation of the jurisdictional exception was inappropriate.

## D. *Assignment of Value to the Convention Center*

For each of the three years in dispute, the City assigned the Convention Center a fixed value of $5,040,900. IPROC views this consistent assignment of value as arbitrary and argues that the City's methodology has resulted in double taxation of the two properties.

The attached Convention Center was constructed at the same time as the Hotel, but it is actually owned by the Norfolk Redevelopment and Housing Authority. The Convention Center was subsequently leased to IPROC for ninety-nine years terminating on December 31, 2089. This lease agreement requires IPROC to pay the appropriate taxing authority all taxes levied on the property. The lease agreement also contemplates both parcels being taxed as a single unit: "Tenant and Landlord shall take such action as may be reasonably required to cause the entire Hotel Tract to be carried as a single parcel on the assessment records and tax rolls of the City of Norfolk, Virginia, separate from other property owned by the Landlord or Tenant." Lease Agreement, Article 8, Subsection 8.2.3.

This section of the lease agreement validates the City assessor's treatment of the Convention Center. Every expert agrees that the interconnectedness of these two parcels in their everyday workings renders it impossible to determine accurately what percentage of income is derived from each parcel. The resulting methodology utilized by the City acts not only as the most practical manner in setting a value for the property but also is consistent with the language of the lease agreement.

Consistent with the lease agreement, Hancock testified that, upon receipt of the tax information from the Hotel, both parcels are treated as one income

producing property for assessment purposes. This combining of values for adjoining parcels is not unique to the City of Norfolk. The City of Virginia Beach used a similar method when performing the tax assessments of two contiguous parcels that comprised a hospital facility and its gymnasium. *Tidewater Psychiatric Inst., Inc. v. City of Virginia Beach*, 256 Va. 136, 139, 501 S.E.2d 761, 762 (1998). In *Tidewater Psychiatric*, the Court examined the combined tax assessments of two separate properties. *Id.* The assessments had been combined because the two parcels were owned by the same individual. *Id.* The Court found there was no impropriety because it was the owner's responsibility to pay the taxes in their entirety. *Id.*

Though the values of two or more congruent parcels have been considered together in the past when the taxes are to be paid by the same taxpayer, each parcel is nevertheless required to have its own individual value assessed. *TB Venture*, 280 Va. at 565, 701 S.E.2d at 795. In *TB Venture*, the Court stated that, even though the entire value of an apartment complex had been computed together, each of the twenty-one separate properties that comprised the complex were required to be assessed at its own fair market value. *Id.* This appears to be exactly what the City assessor has done in the action *sub judice*. In her testimony, Hancock explained that once the income approach was calculated for the total value of the two parcels, a building block or foundation value was taken for each of the two properties. In order to create this valuation foundation, it was necessary for the assessor's office to arrive at a fair base value for the Convention Center.

Hancock testified that, in attempting to arrive at a fair market value for the Convention Center, both the income and sales approach of valuation were considered. She further testified that it was impossible to consider the income approach because, as already explained, it was impossible to differentiate accurately what percentage of income came from each parcel. The sales approach was also not considered because it was not possible to find a sufficient number of sales for standalone convention centers to compare to this property.

Hancock testified that the assessor's office, because there was no facility to equalize the Convention Center with, came to a conservative base value for the Hotel and then assigned a value of $39 dollars a square foot to the Convention Center. Once this assigned value was extrapolated to the entire space of the Convention Center, the value of $5,040,090 was assigned to it. As this value remained consistent in each of the three tax years at issue, IPROC cites this unchanging value as an unexplainable error.

Yet, the explanation is very clear. The Convention Center and the Hotel were to be taxed as one property according to the language of the lease. Due to the intimate intermingling of business income and expenses between the two parcels, it is impractical to use either the income approach or the sales approach to arrive at a fair market value for the Convention Center. As a result, the assessor utilized the cost approach to reach a value for the

Convention Center, and that value was then used as the foundational value for both parcels. This foundational value was then deducted from the entire property and assigned to the Convention Center with the remainder being allocated to the Hotel itself. The City Assessor explains that the foundational value should only change with a drastic renovation or destruction of the Convention Center. The Court does not find in the record that a drastic makeover to the property took place; therefore, the value assigned to the Convention Center appears to be appropriate.

### E. *Assessment Uniformity of the Class of Full Service Hotels*

The Virginia Constitution provides that "all taxes shall be levied and collected under general laws and shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax." Va. Const., art. X. IPROC argues that the Hotel was treated differently than other full service hotels in its class and consequently non-uniformity existed between the assessments.

"[T]he burden of proof shall be upon the taxpayer to show . . . that the assessment is not uniform in its application." Va. Code § 58.1-3984. When deciding the issue of assessment uniformity, the courts have been cautioned against overriding the judgment of the assessor and becoming taxing authorities. *Richmond, Fredericksburg & Potomac RR v. State Corp. Comm'n*, 219 Va. 301, 313, 247 S.E.2d 408, 415 (1978). When a taxpayer attacks an assessment alleging non-uniformity, it is not sufficient to show the valuation is excessive as compared with another valuation of a like property. *Leasco Realty, Inc.*, 221 Va. at 166, 267 S.E.2d at 613; *see Washington County Nat'l Bank v. Washington County*, 176 Va. 216, 218, 10 S.E.2d 515, 516 (1940).

To support its claim, IPROC primarily relied on a worksheet of what it deemed to be hotel properties in the same class as the Hotel in the surrounding Norfolk area. For the three years at issue, of the hotels on the worksheet, the Hotel was the only property whose assessment rose each year. (It is worth noting that, for the fourth year listed on this worksheet, the Hotel's assessment actually decreased at a greater rate than two of the other properties included on the worksheet.)

When the courts look for a lack of uniformity in assessments, many factors are considered in arriving at a determination of fair market value. These factors include size and cost of the property, design style, location, appearance, availability of use, and the economic situation prevailing in the area. *Smith v. City of Covington*, 205 Va. 104, 109, 135 S.E.2d 220, 224 (1964). IPROC simply provided a list of hotels and their values in and around the Norfolk area without showing that the City assessor selectively included or left out any particular factors in an assessment of the individual hotels. Therefore, the worksheet submitted by IPROC fails to put forth any

substantial evidence to show lack of uniformity or to demonstrate how these hotel properties were treated differently.

In addition to the worksheet, Lloyd-Jones testified for IPROC. Lloyd-Jones informed the Court that she performed three separate appraisals on the property, and she explained these findings during trial.

To prove a lack of uniformity, IPROC relied on Lloyd-Jones's opinion that she would have expected all of the hotels to decrease in value during this three year time period. Lloyd-Jones based this conclusion on her knowledge of the hotel industry and its trends. However, absent clear evidence of specific errors, expert testimony that merely disagrees with the results of the City's assessment methods is insufficient to prove a lack of uniformity. *Leasco Realty*, 221 Va. at 166, 267 S.E.2d at 613.

IPROC failed to submit any evidence in addition to the worksheet of hotel values and the opinion of its expert appraiser to prove a lack of uniformity. Therefore, the evidence and testimony provided by IPROC is simply insufficient to overcome the presumption of uniformity in favor of the assessor.

## Conclusion

Though each of the expert witnesses was knowledgeable and capable, the Court finds the City assessor's testimony to be the most credible with respect to the property and accuracy of the assessment. Judgment will be entered for the Defendant, and the complaint will be dismissed and remanded from the docket to be placed among the ended actions of the Court.