COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Felton, Judges Petty and McCullough
Argued at Alexandria, Virginia

**UNPUBLISHED**

BRETT A. PECK

                                                     MEMORANDUM OPINION[*] BY

v.       Record No. 0587-13-4                  JUDGE STEPHEN R. McCULLOUGH
                                                       MARCH 25, 2014

LEILA PECK

FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
Louise M. DiMatteo, Judge

Brett A. Peck, *pro se*.

Jeff Evan Lowinger (Robert T. Orr; New & Lowinger, on brief), for
appellee.

Brett A. Peck, husband, assigns the following four errors to the decision of the circuit

court: (1) the trial court erred in awarding wife half of all the post-separation increase in value of

the townhouse development held by Arlington Development, LLC when only a small initial

contribution to the development came from marital funds and husband was responsible for

developing the property post-separation; (2) the trial court erred in ruling that his wife's "book of

business" at a brokerage firm was separate property and assigning it no value; (3) the trial court

erred in the computation of the increase in value of the townhouse development held by

Arlington Development, LLC; and (4) the trial court failed to consider the tax implications to

husband of the liquidation of his share of the marital assets and his separate assets in order to pay

the settlement. We affirm the decision of the trial court.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

The parties were married on August 18, 1994. Husband worked as a CPA and, later, as a

real estate developer. Wife was employed as a financial advisor throughout the marriage. The

parties separated in March of 2010.

"In reviewing an equitable distribution award on appeal, we recognize that the trial

court's job is a difficult one." Shackelford v. Shackelford, 39 Va. App. 201, 210, 571 S.E.2d

917, 921 (2002). "The goal of equitable distribution is to adjust the property interests of the

spouses fairly and equitably." Booth v. Booth, 7 Va. App. 22, 27, 371 S.E.2d 569, 572 (1988).

"Fashioning an equitable distribution award lies within the sound discretion of the trial judge and

that award will not be set aside unless it is plainly wrong or without evidence to support it."

Srinivasan v. Srinivasan, 10 Va. App. 728, 732, 396 S.E.2d 675, 678 (1990). Thus, "[a]s long as

evidence in the record supports the trial court's ruling and the trial court has not abused its

discretion, its ruling must be affirmed on appeal." Brown v. Brown, 30 Va. App. 532, 538, 518

S.E.2d 336, 338 (1999).

I. ARLINGTON DEVELOPMENT AND THE TOWNHOUSE DEVELOPMENT

In 2009, husband and his business partner, Dennis Zauner, acquired certain parcels of

land. Husband and Zauner formed Arlington Development in January of 2010. They each own

50% of Arlington Development. Both men made initial contributions of $26,000 in December of

2009, at a time when husband and wife were still living together. The parcels of land at issue

were transferred to Arlington Development during the marriage. One of the parcels was then

subdivided into five parcels based on an application by Arlington Development, and new

townhomes were built on the site, called Tazewell Court.

Arlington Development received a loan from Courthouse Heights to build the Tazewell

Court project. As of December 31, 2011, Arlington Development owed $1.8 million to

Courthouse Heights. Courthouse Heights is a corporation formed in 2002 by husband and Zauner. Husband has a 40% stake in Courthouse Heights, and Zauner controls 60% of the corporation. There is no dispute that husband's interest in Courthouse Heights is marital property.

Husband points out that only $26,000 of martial funds were contributed to a project ultimately worth more than $4,000,000. He stresses that construction was not complete until March 2012, nearly two years after he and wife separated. Husband testified at the hearing that he was responsible for the entire development process: he developed the site plan, obtained the necessary County permits, secured funding for the project, and supervised the construction. Conversely, wife acknowledged at the hearing that she was not involved in this development. The trial court classified husband's interest in Arlington Development as marital property. Husband disagrees. He claims the property should be considered hybrid property. Husband does not dispute that Arlington Development should be valued, in part, as a marital asset. He argues, however, that his post-separation efforts greatly increased the value of the property and that he, not wife, should reap the benefit of those efforts.

"Because the trial court's classification of property is a finding of fact, that classification will not be reversed on appeal unless it is plainly wrong or without evidence to support it." Ranney v. Ranney, 45 Va. App. 17, 31-32, 608 S.E.2d 485, 492 (2005) (citations omitted).

We begin with the statute. Pursuant to Code § 20-107.3(A)(2), husband's interest in Arlington Development must be classified as marital property. "[P]roperty acquired by each party during the marriage" is marital property. Code § 20-107.3(A)(2)(iii). Arlington Development was formed during the marriage. Therefore, it constitutes marital property and is subject to equitable distribution according to the factors enumerated in the statute. Code § 20-107.3(E).

In crafting the equitable distribution statute, the General Assembly directed courts to look at a broad range of factors. This policy choice by the legislature vests judges with broad discretion to look at the entirety of the marriage rather than focusing on a specific time period or a specific asset. Here, for example, husband acquired the intellectual capital that enabled him to develop these properties during the marriage. At the beginning of the marriage, as he acknowledged in his testimony, he was starting his career as a CPA and striving to get his business off the ground while wife "earned the lion's share" of the couple's income. In addition, the majority of the financing obtained for the townhouse development Arlington Development was building came from Courthouse Heights, an entity created during the marriage. Therefore, although husband's physical efforts developed the property post-separation, the trial court, looking at all of the evidence, did not abuse its discretion in awarding half of the interest in Arlington Development to wife. The role of this Court is not to grade the fairness of the trial court's decision. This Court is limited to reviewing whether the claims of legal error brought by husband are well-founded. As a matter of law, under the plain language of Code § 20-107.3, the trial court did not err in classifying husband's interest in Arlington Development – which was acquired during the marriage – as marital and dividing it equally between the parties.

We find the cases cited by husband unpersuasive. Husband cites Dietz v. Dietz, 17 Va. App. 203, 209-10, 436 S.E.2d 463, 467 (1993), for the proposition that the marriage will be deemed to have ended for purposes of classifying property as marital on the date of the last separation. Dietz does not help husband, however, because his interest in Arlington Development came into being during the marriage and it is, therefore, marital property.

Husband also relies on Campbell v. Campbell, Record No. 1629-10-2, 2011 Va. App. LEXIS 264 (Va. Ct. App. Aug. 9, 2011), to argue that the post-separation increase in value should be classified as separate property. Indeed, in that case we held that

- 4 -

> [W]here the parties have separated and one spouse contributes significant personal effort that results in substantial appreciation of the *marital* property, that spouse is able to claim the increase in value of the marital property as his own separate property immune from equitable distribution.

Id. at \*15 (emphasis in original). As an unpublished case, Campbell is not binding authority. Rule 5A:1(f). A circuit court certainly may conclude that a significant increase in the value of marital property is attributable to the post-separation efforts of one spouse and that the spouse who put forth the effort should be rewarded accordingly. Nevertheless, by statute, marital property remains marital property, subject to equitable distribution. We are bound by the language of the statute.

Campbell relies on Tucker v. Wilmoth-Tucker, Record No. 2008-09-2, 2010 Va. App. LEXIS 199 (Va. Ct. App. May 18, 2010), as support for its holding. In Tucker, it was undisputed that certain shares of stock were the husband's separate property. Id. at \*14. We further observed that

> it is undisputed that any increase in value of those shares that occurred during the marriage was due to husband's personal efforts and is therefore marital property under Code § 20-107.3(A)(3)(a). Any increase in value of those shares that occurred after the date of separation due to husband's personal efforts is husband's separate property.

Id. at \*14-\*15. Tucker therefore addressed the increase in value of *separate* property during the marriage and then post-separation. It does not support husband's position.

In Pearson v. Pearson, Record No. 2142-05-2, 2006 Va. App. LEXIS 334 (Va. Ct. App. July 25, 2006), also cited by husband, we held that the husband had failed to sustain his burden of proving that the increase in value of a newspaper was attributable to his own post-separation efforts, rather than to other factors. Therefore, the trial court did not err in awarding wife 55% of the newspaper. Id. at \*21. We do not interpret Pearson as standing for the proposition that a trial

court always must attribute post-separation gains in their entirety to the spouse whose efforts are responsible for those gains.

Ultimately, the statute does not contain a mandate to attribute the increase in value of a marital asset to a spouse whose efforts are responsible for that increase in value. Rather, courts are directed to consider a broad range of circumstances in equitably apportioning the marital estate. We find no abuse of discretion on these facts.

## II. WIFE'S BOOK OF BUSINESS

Wife had worked as a financial advisor for nearly ten years prior to the marriage. She continued working in that capacity throughout the marriage. Husband contended that her "book of business" – that is, the accounts managed by wife – was marital property. Wife countered that the book of business was, in fact, nothing more than her personal goodwill with her client base, and as such, not a marital asset subject to equitable distribution. Alternatively, she argued that because her employment as a financial advisor predated the marriage by nearly ten years, it was husband's burden to prove that the increase in value of the book of business was due to her efforts during the marriage. The trial court held the book of business was wife's separate property, reasoning that wife "came into the marriage with this portfolio." The trial court held that husband had failed to meet his burden to prove the increase in the value of this asset was attributable to wife's personal efforts. The court stated that it had "no proper evidence to substantiate the value of the book when Ms. Peck started, [or] any proper evidence of value at the evidentiary hearing. The argument fails for lack of proof."

Husband contends that the trial court erred in finding wife's book of business constituted separate property. He further argues that, even if the book of business can be considered hybrid property, he met his burden of proof to show an increase in value of this separate property.

Classification of property is a factual matter and, therefore, the trial court's classification of property "will not be reversed on appeal unless it is plainly wrong or without evidence to support it." Ranney, 45 Va. App. at 31-32, 608 S.E.2d at 492.

Wife was employed as a stockbroker for approximately ten years before the marriage. Therefore, she brought the book of business with her into the marriage. Husband offered the testimony of an expert, who opined that changes in the industry (known as the "Broker Protocol") made it far easier for a financial advisor to sell her book of business. Prior to those changes, he testified, firms often would sue each other when one broker left and took her clients to another firm. He explained that the book of business consists of "[t]he accounts that she currently manages." Husband's expert valued wife's book of business at $400,000. He offered no opinion concerning the value of wife's book of business when she entered the marriage.

Husband contends that wife did not have a book of business or that it was valueless at the time she wed, resulting in appreciation during the marriage. This contention is belied by the record. Husband's expert explained that the book of business consists of "the accounts that [wife] manages." As a financial advisor, she managed some accounts prior to the marriage and during the marriage. It is true that a book of business was much less portable prior to changes in the industry. The evidence from husband's own expert as well as from wife's employer shows, however, that financial advisors could and did move from firm to firm and take clients with them before the institution of the Broker Protocol. According to the evidence, changes in the industry rationalized and streamlined the process. The manager of the branch where wife works testified that the Broker Protocol "was set up several years back to simplify or eliminate the litigation process when one broker leaves from a Protocol Firm A to a Protocol Firm B." The value of the book of business may have been limited due to the risk of litigation, but limited value is not the same as no value.

Property is separate under Code § 20-107.3(A)(1)(i) when it is "acquired by either party before the marriage." The Code further provides that

> [i]n the case of the increase in value of separate property during the marriage, such increase in value shall be marital property only to the extent that marital property or the personal efforts of either party have contributed to such increases, provided that any such personal efforts must be significant and result in substantial appreciation of the separate property.

Code § 20-107.3(A)(3)(a). With respect to burdens of proof, the law is clear that

> the nonowning spouse shall bear the burden of proving that (i) contributions of marital property or personal effort were made and (ii) the separate property increased in value. Once this burden of proof is met, the owning spouse shall bear the burden of proving that the increase in value or some portion thereof was not caused by contributions of marital property or personal effort.

Id. Thus, contrary to his argument on appeal, the book of business existed prior to marriage, although its portability was restricted at that time. Moreover, husband bore the burden of proving that wife made contributions of personal effort and that the separate property increased in value. The trial court found that husband did not meet that burden, and the record supports the judgment of the trial court.[1]

### III. VALUE OF THE TOWNHOUSE DEVELOPMENT

Husband argues the trial court erred in three respects in assessing the value of the townhouse development held by Arlington Development: (1) by failing to consider the

---

[1] We have considered David v. David, ___ Va. ___, 754 S.E.2d 285 (2014), but find that decision inapplicable. The issue before the Court in that case considered which party bore the burden of proof on the question of causation under Code § 20-107.3(A)(3)(a). In other words, which spouse must prove that the personal efforts of the spouse who came into the marriage with certain property caused this separate property to appreciate in value. The Court concluded that the owning spouse bears the burden of proving that personal efforts did not cause an increase in value, but only after the nonowning spouse has first shown personal efforts were made and the property actually appreciated in value. That question is not before us. Husband here argues that the property is marital, not separate, and, in addition, the trial court ruled that he failed to meet his burden of proving a baseline for the appreciation of that property during the marriage.

construction costs incurred in the first quarter of 2012; (2) by failing to adjust the value to account for the compensation due to husband for his work on the project; and (3) by generally accepting an inflated appraisal. He notes that he provided an updated balance sheet closer to trial that reflected additional construction costs not reviewed by wife's expert. He also points to the fact that he and his partner ultimately will receive compensation for their efforts in developing the property. Finally, he asserts that the appraisal relied on dissimilar properties for comparison, and the comparison made was not current. He contends that his own expert's valuation was more credible.

Valuation, like classification, is a finding of fact that we will not disturb as long as it is supported by credible evidence. See Sfreddo v. Sfreddo, 59 Va. App. 471, 493, 720 S.E.2d 145, 156 (2012) (quoting Howell v. Howell, 31 Va. App. 332, 339, 523 S.E.2d 514, 518 (2000)).

The trial court committed no error of law in failing to consider the additional construction costs. At trial, husband's counsel attempted to cross-examine wife's expert concerning additional expenses incurred by Arlington Development. When it became clear that this information had not been submitted to wife until *after* the expert had prepared and filed his report, the court foreclosed cross-examination, noting that "[i]f you knew it and you didn't produce it before [the expert's] report was issued, you can't cross-examine him on it. He doesn't know it." We are disinclined to second-guess this discretionary, trial-management call by the trial court.

As to husband's argument that wife's expert should have factored in his deferred compensation for the project, the record supports the trial court's decision not to consider it. As of trial, no compensation had been paid. Husband acknowledged that he simply did not know when it would be paid. In addition, compensation would be forthcoming only when the townhomes were sold. None had been sold as of the date of trial. Neither husband nor his

partner provided an exact figure for husband's future compensation. The compensation figure was never reduced to writing. Moreover, the evidence established a pattern of reinvesting profit in new projects. Husband's partner explained that he typically kept profits in the company rather than distributing them, to enable him to fund other projects. On these facts, the trial court did not abuse its discretion in failing to factor in husband's speculative future compensation.

Finally, the trial court heard the testimony from both appraisers and credited the testimony offered by wife's expert. To the extent the issue was presented to the trial court as a "battle of experts," "we will defer to the judgment of weight and credibility given to the testimony of the experts by the trial court." Tidewater Psychiatric Inst. v. City of Virginia Beach, 256 Va. 136, 141, 501 S.E.2d 761, 764 (1998). The court heard detailed testimony about the comparable properties used by both experts in assessing the subject properties. The trial court had ample basis to accept the testimony of wife's expert on this point and to reject the valuation from husband's appraiser.

IV.  TAX IMPLICATIONS

Code § 20-107.3(E)(9) directs trial courts to consider the tax consequences of an equitable distribution award. The trial court expressly stated that it had considered these tax consequences. How much weight the trial court gives to this factor is a matter of discretion for the trial court. Owens v. Owens, 41 Va. App. 844, 859, 589 S.E.2d 488, 496 (2003). Husband argues that the award to wife of $1,245,860 is far more than his cash on hand. He stresses that his real estate holdings are illiquid in nature. He concedes in his brief, however, that tax on the sale of the primary residence would be "close to zero." That home is valued at $1.5 million, and it is titled in husband's name. Husband would receive half of the proceeds from the sale of the home. According to husband, he has cash on hand of $202,315, though he could not state the

total of his liquid assets with certainty at trial. Husband also owns interests in other money-making businesses.

First, the trial court considered the tax consequences of the equitable distribution, which is all the statute required the court to do. Second, the trial court made allowance for the possibility that husband might not be able to immediately satisfy the award. The court's order provides that in the event husband is unable to

> deliver the full amount of the monetary award in cash or certified funds on, or before, June 1, 2013, then any unpaid amount shall automatically be reduced to judgment . . . unless Mr. Peck is able to demonstrate to the Court that he has made good faith efforts to satisfy the monetary award.

Husband has failed to show any error on the trial court's part with regard to considering the tax consequences of the award.

## CONCLUSION

We affirm the decision of the trial court.

Affirmed.